# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

CASE NO. 17-11009

MARNIKA LEWIS, *et al.*,
Plaintiffs-Appellants

v.

GOVERNOR OF ALABAMA, et al.,
Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Alabama

**BRIEF OF THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL**

Jon M. Greenbaum
Ezra Rosenberg*
Dariely Rodriguez*
Thomas Silverstein*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1401 New York Avenue N.W.,
Suite 400
Washington, D.C. 20005
(202) 662-8600
             *ATTORNEYS FOR AMICUS CURIAE*

*Pro hac vice applications forthcoming

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rules 26.1-1 and 26.1-2, the Lawyers' Committee for Civil Rights Under Law as

Amicus Curiae hereby certifies that it does not issue stock. Pursuant to Eleventh

Circuit Rules 26.1-1 and 28-1(b), Amicus Curiae hereby certifies that, to the best

of its knowledge, in addition to the individuals and entities listed in Plaintiffs-

Appellants' Opening Brief, the following entity and individuals have an interest in

the outcome of this appeal:

1. Lawyers' Committee for Civil Rights
   Under Law                                    Amicus Curiae

2. Jon Greenbaum                                Counsel for Amicus Curiae

3. Dariely Rodriguez                            Counsel for Amicus Curiae

4. Ezra Rosenberg                               Counsel for Amicus Curiae

5. Thomas Silverstein                           Counsel for Amicus Curiae

i

## TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ...................................................................................1

STATEMENT OF THE ISSUES.......................................................................................2

SUMMARY OF ARGUMENT .........................................................................................2

ARGUMENT .....................................................................................................................4

    I.    THE DISTRICT COURT FAILED TO APPLY THE CORRECT STANDARDS GOVERNING INTENTIONAL DISCRIMINATION CLAIMS AND MISAPPLIED TWOMBLY/IQBAL WHEN IT DISMISSED APPELLANTS' EQUAL PROTECTION CLAIMS. ...........................................4

        A.    The District Court Failed to Apply the Arlington Heights Standards. ......4

        B.    The District Court Misapplied *Twombly/Iqbal*. .........................................8

    II.    AFFIRMING THE DISTRICT COURT'S INTENTIONAL DISCRIMINATION HOLDING COULD HAVE A CHILLING EFFECT ON FUTURE EFFORTS TO MOUNT CIVIL RIGHTS CLAIMS ...........................12

CONCLUSION .................................................................................................................15

CERTIFICATE OF COMPLIANCE................................................................................16

CERTIFICATE OF SERVICE .........................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aman v. Furniture Rental Corp.*,
85 F.3d 1074 (3d Cir. 1996) ......................................................................8

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
133 S. Ct. 2247 (2013)................................................................................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................3-4, 8-9, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................... 4, 8, 13

*Cent. Ala. Fair Hous. Ctr. v. Magee*,
835 F. Supp. 2d 1165 (M.D. Ala. 2011), vacated on other grounds, 2013 WL
2372302 (11th Cir. 2013).........................................................................10

*Coalition for Equity & Excellence in Maryland Higher Education v. Maryland
Higher Education Commission*,
977 F. Supp. 2d 507 (D. Md. 2013)...................................................1

*Flemming v. Nestor*,
363 U.S. 603 (1960)...................................................................................6

*Fox v. Vice*,
563 U.S. 826 (2011).................................................................................14

*Houser v. Pritzker*,
 28 F. Supp. 3d 222 (S.D.N.Y. 2014) .................................................1

*Hunt v. Cromartie*,
526 U.S. 541 (1991)...................................................................................7

*Jabary v. City of Allen*,
547 F. App'x 600 (5th Cir. 2013) ..........................................................5

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)................................................................................12

*Mhany Management, Inc. v. County of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ....................................................... 1, 7, 11

*Newman v. Piggie Park Enterprises, Inc.*,
  390 U.S. 400 (1968) ...................................................................14

*Reno v. Bossier Parish Sch. Bd.*,
  520 U.S. 471 (1997).....................................................................9

*Riordan v. Kempiners*,
  831 F.2d 690 (7th Cir. 1987) .......................................................8

*Shelby County v. Holder,*
  133 S. Ct. 2612 (2013)..................................................................1

*Smith v. Doe*,
  538 U.S. 84 (2003).......................................................................6

*Smith v. Town of Clarkton*,
  682 F.2d 1055 (4th Cir. 1982) ....................................................11

*Surtain v. Hamlin Terrace Foundation*,
  789 F.3d 1239 (11th Cir. 2015) ............................................. 11, 12

*Swierkiewicz v. Sorema*,
  534 U.S. 506 (2002).....................................................................13

*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016) ....................................................6, 7

*Village of Arlington Heights v. Metropolitan Corporation*,
  429 U.S. 252 (1977)............................................................. passim

*Washington v. Davis*,
  426 U.S. 229 (1976).....................................................................7

*Young Apartments v. Town of Jupiter*,
  529 F.3d 1027 (11th Cir. 2008) ...................................................9

**Page(s)**

## STATUTES

42 U.S.C. §  12205 ..................................................................................14

42 U.S.C. § 1983 ....................................................................................14

42 U.S.C. § 1988 ....................................................................................14

42 U.S.C. § 2000e-2(k) ..........................................................................14

ALA. CONST. art. IV, § 106 .....................................................................10

Alabama Uniform Minimum Wage and Right to Work Act 2016-18 ............ 2, 9, 10

Fed. R. App. P. 29 ....................................................................................1

Fed. R. App. P. 32(a)(5) .........................................................................16

Fed. R. App. P. 32(a)(6) .........................................................................16

Fed. R. App. P. 32(a)(7)(B) ....................................................................16

Fed. R. App. P. 32(a)(7)(B)(iii) ..............................................................16

Fed. R. Civ. P. 12(b)(6) ...........................................................................8

Fed. R. Civ. P. 8 ......................................................................................8

Fifth Circuit R. 47.5 ................................................................................5

**Page(s)**

## OTHER AUTHORITIES

Edward A. Hartnett, Taming *Twombly*, Even After *Iqbal*, 158 U. PENN. L. REV. 473 (2010) .................................................................................................13

Victor Quintanilla, Beyond Common Sense: A Social Psychological Study of Iqbal's Effect on Claims of Race Discrimination, 17 MICH. J. RACE & L. 1 (2011) ...............................................................................................13

## **INTEREST OF AMICUS CURIAE**

The Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee") is a nonpartisan, nonprofit organization that was formed in 1963 at the request of President John F. Kennedy to enlist the private bar's leadership and resources in combating racial discrimination. The principal mission of the Lawyers' Committee is to secure equal justice for all through the rule of law. To that end, the Lawyers' Committee has participated in hundreds of impact lawsuits challenging race discrimination prohibited by the Constitution and federal statutes relating to voting rights, housing, employment, and education. *See, e.g., Shelby County v. Holder,* 133 S. Ct. 2612 (2013); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247 (2013); *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016); *Houser v. Pritzker,* 28 F. Supp. 3d 222 (S.D.N.Y. 2014); *Coalition for Equity & Excellence in Maryland Higher Education v. Maryland Higher Education Commission*, 977 F. Supp. 2d 507 (D. Md. 2013).  The Committee has an interest in the instant appeal because it raises important pleading issues that are central to its mission. The parties have consented to the filing of this Amicus brief. [1]

---

[1] Pursuant to Fed. R. App. P. 29, Amicus certifies that this brief was not authored in whole in or part by either party's counsel; that neither party nor their counsel contributed money to fund preparing or submitting this brief; and that no person other than Amicus contributed money to fund preparing or submitting this brief.

## STATEMENT OF THE ISSUES

Whether the district court failed to apply the correct legal standards for evaluating intentional discrimination claims when it dismissed Appellants' Equal Protection claim, resulting in a chilling effect on efforts to mount meritorious civil rights litigation.

## SUMMARY OF ARGUMENT

Amicus curiae Lawyers' Committee for Civil Rights Under Law submits this brief in support of Appellants' appeal to focus the Court's attention on an issue of over-arching significance: the district court's cursory dismissal at the initial pleading stage of Appellants' Equal Protection claim that challenged the constitutionality of Alabama's law purporting to preempt Birmingham's minimum wage ordinance. Alabama Uniform Minimum Wage and Right to Work Act 2016-18. The district court's approach ignored Supreme Court precedent governing intentional discrimination claims and misapplied Supreme Court standards on addressing motions to dismiss. If affirmed, the district court's approach could have a chilling effect on the pressing of discrimination claims and unduly block access to the courts by the most vulnerable members of our society.

Appellants pled the discriminatory intent of this law and the circumstantial evidence surrounding its enactment with painstaking particularity, consistent with the controlling standards of *Village of Arlington Heights v. Metropolitan*

2

*Corporation,* 429 U.S. 252 (1977). Nevertheless, purporting to rest its decision on the *Twombly/Iqbal* "plausibility" standards, the district court summarily dismissed the Equal Protection claim on the bases that there was an "obvious alternative explanation" for the State's action – *i.e.,* the State's economic justification -- and no allegation that any specific legislators harbored discriminatory intent. Dkt. 52 at 21.

The district court's failure to apply the *Arlington Heights* standards to Appellants' well-pled complaint is sufficient basis for reversal. Its unquestioning acceptance of the State's rationale for its action as an "alternative explanation" overlooks completely that a plaintiff need prove only that discriminatory intent was "a" motivating factor, and not even the primary one, behind challenged official action, and that a plaintiff's allegations to that effect must be presumed as true on a motion to dismiss. *Arlington Heights,* 429 U.S. at 265. And its holding Appellants to pleading direct proof of one or more specific legislators' pernicious purpose ignores both law and common sense that instruct that those engaged in discrimination today rarely leave a paper trail. Circumstantial evidence is often the only way to prove intentional discrimination, and Appellants pled facts that touched upon each of the *Arlington Heights* factors from which an inference of discriminatory purpose could reasonably be drawn.

Further, the district court's misapplication of the pleading standards set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007), in deciding a motion to dismiss for failure to state a claim in an intentional discrimination case, is contrary to the Supreme Court's instruction in *Iqbal* and *Twombly*, *see, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556, that its plausibility requirement was not akin to a probability requirement. This misapplication not only makes victims of intentional discrimination less likely to prevail in civil rights litigation, it also deters aggrieved parties from bringing their claims to court in the first place.

## **ARGUMENT**

**I.    THE DISTRICT COURT FAILED TO APPLY THE CORRECT STANDARDS GOVERNING INTENTIONAL DISCRIMINATION CLAIMS AND MISAPPLIED TWOMBLY/IQBAL WHEN IT DISMISSED APPELLANTS' EQUAL PROTECTION CLAIMS.**

The district court's dismissal of Appellants' Equal Protection claims is based on a gross departure from the standards set by the Supreme Court for adjudicating intentional discrimination claims and an improper application of the *Twombly/Iqbal* "plausibility" standard that is virtually impossible for litigants to meet at the pleadings stage of most cases.

A.    <u>The District Court Failed to Apply the Arlington Heights Standards.</u>

In dismissing Appellants' Equal Protection claims, the district court ruled that "an equal protection claim is not plausible where there is an 'obvious alternative explanation' for the conduct other than intentional discrimination," Dkt. 52 at 21, citing to an unpublished Fifth Circuit decision which, under the rules of that court,

4

"is not precedent" except under limited circumstances not present here. Fifth Circuit R. 47.5.[2] Further, the court ruled, without reference to any authority, that the Appellants were required to allege that "particular legislators" were motivated by an intent to discriminate for their claim to be plausible, Dkt. 52 at 21, and held Appellants to a standard of "clearest proof" of their intent claim. Dkt. 52 at 24. The standards to which the district court held Appellants in pleading intentional discrimination claims find no basis in precedent, and, in fact, run contrary to the controlling Supreme Court authority.

First, there is no "obvious alternative explanation" defense available to defendants whose official action is challenged under the Equal Protection Clause. Indeed, it is settled law that discriminatory intent need be only "a" motivating factor, and not even the primary or dominating one in challenged official action. *Arlington Heights,* 429 U.S. at 265. This rule is based on two considerations: first, that legislative action is rarely motivated "solely by a single concern," and, second, that when racial discrimination is a motivating factor, there is no judicial deference due

---

[2] That the Fifth Circuit, in the unpublished opinion, *Jabary v. City of Allen*, 547 F. App'x 600, 605 (5th Cir. 2013), found the allegations of intentional discrimination lacking is not surprising, as they were limited to the conclusory paragraph that the plaintiff was a member of various protected classes, and that the official action was taken against him because of those statuses. In that specific context where the plaintiff had not alleged any specific facts supporting the discriminatory intent allegation, the Fifth Circuit indicated that there were "obvious alternative explanations." Nowhere did the court indicate that it was laying down a rule of law applicable to all intentional discrimination claims.

the legislative action. *Id.* at 255-256. In contrast, the district court's conclusory assertion that there was an "obvious alternative explanation" other than discriminatory intent wrongly presumes the legitimacy of the "official" rationale.

For the same reasons, there is no "clearest proof" standard applicable to Appellants' intent claim. Dkt. 52 at 24. As the Fifth Circuit recently explained, that heightened standard is contrary to the rationale of *Arlington Heights'* encouragement of the use of circumstantial evidence in intent cases. *Veasey v. Abbott*, 830 F.3d 216, 230 n.12 (5th Cir. 2016).[3]

Finally, there is no requirement that a plaintiff prove discriminatory intent with direct evidence, let alone express statements by specific legislators that they intended to engage in racial discrimination. Dkt. 52 at 21. Recognizing the rarity of clear evidence of intentional racial discrimination, the Supreme Court in *Arlington Heights* allowed that discriminatory intent cases may be proved by circumstantial *or* direct evidence, "as may be available." 429 U.S. at 266. Accordingly, the Court set forth examples of the types of evidence that could support such a claim: whether the policy or practice has a disparate impact, the "historical background of the decision," procedural or substantive departures from normal practice, and the

---

[3] As the Fifth Circuit explained, the cases relied upon by the district court for that standard are inapposite ex post facto cases. *See Smith v. Doe*, 538 U.S. 84, 91-92 (2003); *Flemming v. Nestor*, 363 U.S. 603 (1960), discussed in *Veasey v. Abbott*, 830 F. 3d 216, 230 n.12 (2016).

"legislative or administrative history" of the policy or practice. 429 U.S. at 266-68. These factors are not exhaustive. *Id.* at 268. Additionally, a plaintiff need not establish that each and every *Arlington Heights* factor supports an inference of intentional discrimination in order to prove that disparate treatment has occurred. *See Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016) (affirming finding of intentional discrimination where court chose not to give weight to evidence of the defendant's history of discrimination). Indeed, a discriminatory intent may "be inferred from the totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976).

As courts have applied the *Arlington Heights* standards, they have recognized the obvious: in today's world, those intending to discriminate on the basis of race may be sufficiently sophisticated or wary of litigation so as not to broadcast their intentions. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1991) ("Outright admissions of impermissible racial motivation are infrequent and plaintiffs often must rely upon other evidence."). A requirement of direct evidence of discriminatory animus expressed by individual legislators "would essentially give legislatures free rein to racially discriminate so long as they do not overtly state discrimination as their purpose and so long as they proffer a seemingly neutral reason for their actions." *Veasey v. Abbott*, 830 F.3d 216, 236-237 (5th Cir. 2016) ("In this day and age we rarely have legislators announcing an intent to discriminate upon race, whether in

7

public speeches or private correspondence."). *See also Aman v. Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996) ("The sophisticated would-be violator has made our job a little more difficult. Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct."); *Riordan v. Kempiners*, 831 F.2d 690, 697 (7th Cir. 1987) ("Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it…"). Thus, contrary to the district court's reasoning, there is no rule – nor can there be – that a plaintiff must support a discriminatory intent claim with express evidence that individual legislators intended to discriminate.

B.    The District Court Misapplied *Twombly/Iqbal.*

Compounding its failure to apply the standards applicable to discriminatory intent claims, the district court purported to apply the plausibility standard of *Twombly/Iqbal,* in a manner that ignored the specifics of Appellants' Complaint. In *Twombly*, the Supreme Court held that to satisfy the pleading requirements of Fed. R. Civ. P. 8 and defeat a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that render its claim for relief plausible. 550 U.S. at 556. In *Iqbal*, the Supreme Court applied this rule to a claim of intentional discrimination, holding that a complaint is facially plausible if it includes "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." 556 U.S. at 678. The Court emphasized that it was not requiring probability at the pleading stage. *Id.* at 678. Here, Appellants pled detailed allegations consistent with the *Arlington Heights* standards; inexplicably, the district court failed to analyze them to see whether a reasonable inference of discriminatory intent could be drawn from them.

First, the complaint alleges the existence of statistical evidence of the disparate impact of Act 2016-18 on African Americans in Birmingham. Dkt. 18 ¶¶ 30, 31, 94, 102, 136. It alleges that workers in both Alabama and Birmingham, with wages below $10.10 per hour are disproportionately African American. Dkt. 18 ¶30. The disparate impact of the action is an "important starting point" under the *Arlington Heights* standard. *Arlington Heights*, 429 U.S. at 266; *see also Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 489 (1997); *Young Apartments v. Town of Jupiter*, 529 F.3d 1027, 1045 (11th Cir. 2008).

Second, the complaint makes specific allegations of historical discrimination by the State of Alabama, including by the Alabama Legislature, Dkt. 18 ¶¶38-81, and that many of the same legislators who co-sponsored and voted for Act 2016-18 were among those who supported discriminatory immigration regulation efforts, with two co-sponsors having made statements in support of the immigration bill that a federal court later found evinced discriminatory animus. Dkt. 18 ¶¶76, 80, 81

9

(citing *Cent. Ala. Fair Hous. Ctr. v. Magee*, 835 F. Supp. 2d 1165, 1192-93 (M.D. Ala. 2011), vacated on other grounds, 2013 WL 2372302 (11th Cir. 2013)).

Third, the complaint alleges that the State of Alabama deviated from procedural and substantive norms when it passed Act 2016-18: in addition to the extraordinary haste with which the State enacted the law, the Alabama Legislature failed to provide the notice to Birmingham residents required by Section 106 of the Alabama Constitution when the Legislature considers a bill affecting one municipality. Dkt. 18 ¶¶94-96; ALA. CONST. art. IV, § 106. Additionally, the complaint alleges that the legislative record is devoid of any indication that members of the Legislature considered studies or reports on the impact of local living wage ordinances of the sort that would ordinarily inform substantive decision-making. Dkt. 18 ¶140.

Fourth, as alleged in the amended complaint, the legislative record contains statements reflecting discriminatory animus by proponents of Act 2016-18: legislators made statements relying upon stereotyped assumptions about African Americans, such as the paternalistic view that access to jobs paying sub-living wages is in the interest of low-income, disproportionately African American workers in Birmingham. Dkt. 18 ¶¶97, 99. Because legislators are generally savvy enough to know not to make specific references to race as a motivation for their actions, it is entirely appropriate for a court to analyze nominally race neutral statements to

10

determine whether they constitute euphemisms or coded references to people of color. *See, e.g.*, *Mhany Management, Inc.*, 819 F.3d at 608-11; *Smith v. Town of Clarkton*, 682 F.2d 1055, 1066 (4th Cir. 1982). Another legislator speculated that the City of Montgomery, which is also majority African American, would follow Birmingham's path if its living ordinance was allowed to stand, further conflating race with support for living wage policies. Dkt. 18 ¶¶100, 101.

Nowhere does the district court address these allegations as relevant to its decision to dismiss the Equal Protection claim. Indeed, its decision ignores that the Appellants' allegations are *per se* plausible, because they point to precisely the sort of evidence suggested by the Supreme Court as plausibly supporting a finding of discriminatory intent. Had the court applied the correct standards, it would have necessarily found that Appellants had alleged a plausible theory that intentional discrimination was a motivating factor behind the official action.

The district court applied *Twombly/Iqbal* in a way that exponentially increases the burden on plaintiffs in intentional discrimination cases. In *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015), this Court recently rejected a similar attempt to heighten the burden on civil rights plaintiffs at the pleading stage beyond what is required by *Twombly/Iqbal*. In that case, the district court had denied the plaintiff's motion for a default judgment, which is governed by the same *Twombly/Iqbal* standard as a motion to dismiss for failure to state a claim,

11

on the basis that the plaintiff had not made out a *prima facie* case of race discrimination under Title VII of the Civil Rights of Act of 1964 in light of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Surtain*, 789 F.3d at 1245-46. This Court held that the *McDonnell Douglas* standard is an evidentiary rather than a pleading standard and that plaintiffs need not be able to make out a *prima facie* case at the pleading stage, remanding the case back to the district court to apply the correct plausibility standard. *Id.* at 1246. In the instant case, because Appellants set forth specific facts supporting a plausible inference of discrimination as being one motivating factor, they fully met the *Twombly/Iqbal* standard, and the district court erred in dismissing the Equal Protection claim.

## II. AFFIRMING THE DISTRICT COURT'S INTENTIONAL DISCRIMINATION HOLDING COULD HAVE A CHILLING EFFECT ON FUTURE EFFORTS TO MOUNT CIVIL RIGHTS CLAIMS

If sanctioned by this Court, the district court's approach to motions to dismiss would likely result in the premature dismissal of potentially meritorious civil rights claims. This is not the result intended by the Supreme Court and would have a chilling effect on the bringing of civil rights claims, contrary to express congressional intent.

The Supreme Court made clear in both *Twombly* and *Iqbal* that it did not intend its decision to bar access to the courts for victims of discrimination. The Court repeatedly noted that the plausibility requirement was not a probability requirement.

*See, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. The Court also expressly refused to overrule *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), wherein the Court struck down a heightened pleading requirement of specific facts beyond that necessary to state a discrimination claim. *Twombly*, 550 U.S. at 547.

Although the Supreme Court in *Twombly/Iqbal* urged lower court judges to use their "judicial experience and common sense," *Iqbal,* 556 U.S. at 679, to decide whether claims are plausible, a judge's personal experience may not necessarily reflect the reality of circumstances that give birth to civil rights claims. Some commentators have observed that implicit bias, and specifically a baseline assumption that unlawful discrimination is rare, may skew the results against civil rights claimants. *See*, *e.g.* Victor Quintanilla, Beyond Common Sense: A Social Psychological Study of Iqbal's Effect on Claims of Race Discrimination, 17 MICH. J. RACE & L. 1, 5 (2011) (discussing the role of implicit bias in influencing judicial decisions at the pleadings stage); Edward A. Hartnett, Taming *Twombly*, Even After *Iqbal*, 158 U. PENN. L. REV., 473, 502 (2010) (suggesting that "many judges operate from a baseline assumption that unlawful discrimination is rare"). Amicus is not claiming that the district court in this case held that assumption or operated out of implicit bias. Rather, the point is that, given the inherent subjectivity of judicial experience, the *Twombly/Iqbal* standard should be applied carefully in cases alleging intentional discrimination.

This is particularly so because Congress has clearly indicated that it did not intend to limit access to the courts by victims of discrimination. In fact, Congress has taken several steps to prioritize and institutionalize the role of private attorneys general in enforcing civil rights statutes and Constitutional protections. From the Reconstruction Congress's passage of the Civil Rights Act of 1871, which included what was later codified as 42 U.S.C. § 1983, to the passage of the Civil Rights Attorneys Fees Act of 1976, which included what was codified as 42 U.S.C. § 1988, the legislative branch has striven to incentivize rather than to discourage private actions. *See Fox v. Vice*, 563 U.S. 826, 833 (2011) ("When a plaintiff succeeds in remedying a civil rights violation, … he… vindicate[es] a policy that Congress considered of the highest priority."); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (per curiam) ("Congress therefore enacted the provision… to encourage individuals injured by racial discrimination to seek judicial relief under Title II."). This tendency is written into many of our nation's seminal civil rights laws. *See, e.g.*, 42 U.S.C. § 3613 (authorizing private individuals to enforce the Fair Housing Act through federal court litigation and providing for the award of reasonable attorney's fees and costs to prevailing plaintiffs); 42 U.S.C. §  12205 (providing for the recovery of reasonable attorney's fees and costs by prevailing plaintiffs in judicial actions under the Americans with Disabilities Act); 42 U.S.C. § 2000e-2(k) (providing a burden shifting framework for disparate impact claims

14

under Title VII of the Civil Rights Act of 1964 that grounds a plaintiff's burden in the types of evidence for which they are not at a relative disadvantage in terms of access in comparison to defendants).

Second, a draconian application of the *Twombly/Iqbal* standard, as occurred here, threatens to burden victims of discrimination with unnecessary costs and have a deterrent effect on the pressing of discrimination claims. Forcing plaintiffs to rebut factually an as yet unstated rationale of the state for its challenged action – particularly when much of this information is in the hands of the state – would force plaintiffs to expend significant resources in gathering information (assuming it could be gathered), without the aid of discovery tools. Affirming the district court's approach to Rule 12(b)(6) decision-making threatens to trample on the rights of the most vulnerable members of our society.

## **CONCLUSION**

The Appellants have plausibly pled a claim of intentional discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court's erroneous failure to consider the Appellants' claim in light of the correct legal standards could threaten the ability of victims of discrimination to vindicate their civil rights, resulting in widespread harmful societal consequences, and should be reversed.

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,595 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

<u>/s/ Jon M. Greenbaum</u>
Lawyers' Committee for Civil Rights
Under Law
1401 New York Avenue N.W.
Suite 400
Washington, D.C. 20005
(202) 662-8600

Dated June 21, 2017

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and that service to the participants in this appeal, all of whom are registered CM/ECF users, will be accomplished by the appellate CM/ECF system.

/s/ Michael N. Litrownik
MICHAEL N. LITROWNIK
Outten & Golden LLP
685 Third Avenue
25th Floor
New York, NY 10017
(212) 245-1000

Dated June 12, 2017