No. 17-11009

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

MARNIKA LEWIS, et al.,

*Plaintiffs-Appellants*,

v.

STATE OF ALABAMA, et al.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of Alabama
Case No. 2:16-cv-690-RDP (Hon. R. David Proctor)

_____

## EN BANC REPLY BRIEF OF PLAINTIFFS-APPELLANTS MARNIKA LEWIS, ANTOIN ADAMS, ALABAMA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, AND GREATER BIRMINGHAM MINISTRIES

_____

Barbara J. Chisholm, Esq.
Eric P. Brown, Esq.
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
bchisholm@altber.com
ebrown@altber.com

Mary Joyce Carlson, Esq.
1100 New York Avenue, N.W.
Suite 500 West
Washington, DC 20005
Telephone: (202) 230-4096
carlsonmjj@yahoo.com

*[Additional Counsel on Inside Cover]*

Joe R. Whatley, Jr., Esq.
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Telephone: (205) 488-1226
jwhatley@whatleykallas.com

Robert H. Stroup, Esq.
LEVY RATNER, P.C.
80 Eighth Avenue, 8th Floor
New York, NY 10011
Telephone: (212) 627-8100
rstroup@levyratner.com

Glen M. Connor, Esq.
George N. Davies, Esq.
Richard P. Rouco, Esq.
QUINN, CONNOR, WEAVER,
DAVIES & ROUCO LLP
2 – 20th Street North, Suite 930
Birmingham, AL 35203
Telephone: (205) 870-9989
gconnor@qcwdr.com
gdavies@qcwdr.com
rrouco@qcwdr.com

*Counsel for Plaintiffs-Appellants Marnika Lewis, Antoin Adams, Alabama State Conference of the National Association for the Advancement of Colored People, and Greater Birmingham Ministries.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 26.1, Plaintiffs-Appellants Marnika Lewis, Antoin Adams, Alabama State Conference of the National Association for the Advancement of Colored People, and Greater Birmingham Ministries (collectively "Lewis Plaintiffs") hereby state that none has any parent corporation or issues shares to the public.

Pursuant to Eleventh Circuit Rules 26.1-1, 26.1-2, and 28-1(b), Lewis Plaintiffs hereby certify that, to the best of their knowledge, there are no individuals or entities having an interest in the outcome of this appeal other than those identified in Appellants' Opening Briefs and Appellees' Answering Brief.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................... i

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION ..................................................................... 1

ARGUMENT ............................................................................ 2

I.     Plaintiffs Have Standing To Assert Their Claims ........................................... 2

       A.     Defendants Do Not Contest the Lewis Plaintiffs' Injuries-in-Fact ....... 2

       B.     Plaintiffs' Injuries Are Traceable To Defendants' Conduct ................. 4

       C.     Plaintiffs' Injuries Are Redressable ....................................... 9

II.    The Alabama Attorney General Is A Proper Defendant Under Ex Parte Young ........................................................................ 13

       A.     The Alabama Attorney General Has A Sufficient Connection To Act 2016-18 To Be A Proper Defendant .............................................. 13

       B.     Enforcement Need Not Have Commenced For The Attorney General To Be A Proper Defendant ..................................................... 15

III.   Plaintiffs' Complaint Adequately Alleges Equal Protection Violations ....... 18

CONCLUSION ....................................................................... 26

CERTIFICATE OF COMPLIANCE ............................................... 27

CERTIFICATE OF SERVICE ...................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
138 S.Ct. 2305 (2018) ................................................................ 23, 25

*Adams v. Richardson*,
480 F.2d 1159 (D.C. Cir. 1973) ................................................ 10, 27

*Ambassador Books & Video, Inc. v. City of Little Rock*,
20 F.3d 858 (8th Cir. 1994) ............................................................. 22

*Animal Legal Defense Fund, Inc. v. Glickman*,
154 F.3d 426 (D.C. Cir. 1998) ......................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................... 18

*Boda v. United States*,
698 F.2d 1174 (11th Cir. 1983) ...................................................... 17

*Citizens for Equal Protection v. Bruning*,
455 F.3d 859 (8th Cir. 2006) ............................................................ 6

*City of Miami v. Wells Fargo & Co.*,
__ F.3d __, 2019 WL 1966943 (11th Cir. May 3, 2019) ............................. 19, 25

*Digital Recognition Network, Inc. v. Hutchinson*,
803 F.3d 952 (8th Cir. 2015) ...................................................... 6, 7, 8

*Doe v. Pryor*,
344 F.3d 1282 (11th Cir. 2003) ........................................................ 7

*Doe v. Stincer*,
175 F.3d 879 (11th Cir. 1999) .................................................... 12, 13

*Enders v. Florida*,
535 F. App'x 799 (11th Cir. 2013) .................................................. 18

*Ex Parte Young*,
209 U.S. 123 (1908) ............................................................... *passim*

iii

*Federal Elec. Comm'n v. Akins*,
   524 U.S. 11 (1998)..............................................................................10

*Fitts v. McGhee*,
   172 U.S. 516 (1899)............................................................ 13, 14, 15

*Flemming v. Nestor*,
   363 U.S. 603 (1960)..............................................................................22

*\*Focus on the Family v. Pinellas Suncoast Trans. Auth.*,
   344 F.3d 1263 (11th Cir. 2003) .........................................................4, 5

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992).................................................................. 10, 12

*Gladstone, Realtors v. Village of Bellwood*,
   441 U.S. 91 (1979)..................................................................................6

*Hope Clinic v. Ryan*,
   249 F.3d 603 (7th Cir. 2001)..................................................................6

*Investment Co. Institute v. Camp*,
   401 U.S. 617 (1971)................................................................................5

*Kansas v. Hendricks*,
   521 U.S. 346 (1997)..............................................................................22

*Lewis v. Governor of Alabama*,
   896 F.3d 1282 (11th Cir. 2018) .................................................. passim

*\*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................... passim

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)............................................................................4, 8

*Meese v. Keene*,
   481 U.S. 465 (1987)..............................................................................12

*Missouri v. Jenkins*,
   515 U.S. 70 (1995).................................................................................11

iv

*Mulhall v. UNITE HERE Local 355*,
    618 F.3d 1279 (11th Cir. 2010) ..............................................................10

*Muskrat v. United States*,
    219 U.S. 346 (1911) ..................................................................................5

*N. Carolina State Conf. NAACP v. McCrory*,
    831 F.3d 204 (4th Cir. 2016)........................................................... 20, 24

*Nat'l Audubon Soc'y, Inc. v. Davis*,
    307 F.3d 835 (9th Cir. 2002)...................................................................16

*Nova Health v. Gandy*,
    416 F.3d 149 (10th Cir. 2005) .................................................................11

*Obergefell v. Hodges*,
    135 S.Ct. 2584 (2015) ................................................................................6

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001)............................................................ *passim*

*Parker v. Scrap Metal Processors, Inc.*,
    386 F.3d 993 (11th Cir. 2004) ...................................................................3

*Personnel Administrator of Massachusetts v. Feeney*,
    442 U.S. 256 (1979)..................................................................................20

*Randall v. Scott*,
    610 F.3d 701 (11th Cir. 2010) .................................................................23

*S. Pacific Transp. Co. v. Brown*,
    651 F.2d 613 (9th Cir. 1980)......................................................................7

*Shell Oil Co. v. Noel*,
    608 F.2d 208 (1st Cir. 1979).......................................................................7

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26 (1976)......................................................................................4

*Smith v. Doe*,
    538 U.S. 84 (2003) ............................................................................. 21, 22

*Summit Medical Assoc. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999) .............................................................15

*Utah v. Evans*,
  536 U.S. 452 (2002) ...................................................................... 9, 12, 13

*\*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016)........................................................ 21, 25, 26

*\*Village of Arlington Heights v. Metropolitan Development Corp.*,
  429 U.S. 252 (1977) .................................................................... *passim*

*Westco Corp. v. School District of Philadelphia*,
  6 F.3d 108 (3d Cir. 1993)......................................................................7

*Whole Woman's Health v. Lakey*,
  769 F.3d 285 (5th Cir. 2014)................................................................22

*Wilson v. Stocker*,
  819 F.2d 943 (10th Cir. 1987) .............................................................7

*Wooden v. Bd. of Regents*,
  247 F.3d 1262 (11th Cir. 2001) ...........................................................3

## Rules and Regulations

Fed. R. App. P. 32(a)(7)(B) ...................................................................28

Fed. R. Civ. P. 26.1 ...................................................................... i

11th Cir. R. 32-4 ..................................................................................28

## Treatises

Wright & Miller, *Federal Practice & Procedure* §1357 (3d ed. 2019) ..................23

**INTRODUCTION**

This appeal concerns the district court's pleading stage dismissal of claims that Alabama officials acted with a racially discriminatory motive in adopting a preemption law targeting a majority-African-American city attempting to improve the lives of its residents.  Remarkably, Defendants argue that Plaintiffs should be prevented from asserting their constitutional claims against the responsible State official, and instead should be relegated to suing private parties—namely, Birmingham employers—who have done nothing wrong and are merely following the law for which Defendants are responsible.[1]  Under Defendants' theory, Plaintiffs' ability to adjudicate their federal constitutional claims depends entirely on the discretionary litigation choices of third-parties, i.e., employers choosing to raise the challenged preemption law as an affirmative defense.  There is no limiting principle to this argument.  Indeed, Defendants' standing and *Ex Parte Young* arguments are so extreme that, as Defendants concede, they would require the Court to overrule long-standing precedent.  Supreme Court and Eleventh Circuit precedent clearly establish Plaintiffs' right to pursue claims of intentional race discrimination against Defendants.  The Court should reject Defendants' radical

---

[1] Throughout this brief "Defendants" refers to Defendants State of Alabama and the Alabama Attorney General, and the en banc brief filed by those Defendants is cited as "Defs. Br."

proposal to impose new, heightened barriers for parties alleging such discrimination.

On the merits, Plaintiffs allege facts going to every one of the Supreme Court's factors for identifying intentional discrimination by a legislative body.  In particular, Plaintiffs allege that Act 2016-18 is unique in that it unquestionably targeted a majority African-American city, has a disparate racial impact within that city, was rushed through the Legislature with little opportunity for public comment or debate, was subject to racially-polarized votes in the Legislature, and was enacted without regard to normal procedural requirements.  Especially in light of Alabama's long (and in some instances recent) history of removing authority from local black majorities as they gain and assert power, this is more than enough to plausibly allege intentional discrimination.

## ARGUMENT

### I.    Plaintiffs Have Standing To Assert Their Claims

#### A.    Defendants Do Not Contest the Lewis Plaintiffs' Injuries-in-Fact

Defendants do not dispute that Plaintiffs Lewis' and Adams' unequal treatment and economic injuries are cognizable under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  Defs. Br. at 18.  Not only do Plaintiffs suffer the ongoing economic harm of lower wages, ER040-41, 73, but, as registered voters in Birmingham, ER040, 43, when Act 2016-18 targeted Birmingham and diminished

the power of Birmingham's African-American majority to regulate an important issue, Plaintiffs also suffered the harm of unequal treatment.  *See Wooden v. Bd. of Regents*, 247 F.3d 1262, 1276 (11th Cir. 2001) (recognizing harm of unequal treatment for standing purposes).  Because only one plaintiff need demonstrate standing to confer jurisdiction, *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 n.10 (11th Cir. 2004), Lewis' and Adams' injuries are a sufficient injury-in-fact, as are the injuries suffered by the individually-identified NAACP member, who also works in Birmingham for less than the minimum wage established by the City's Ordinance.  ER040-41; *see also Lewis v. Governor of Alabama*, 896 F.3d 1282, 1290 (11th Cir. 2018), *vacated by* 914 F.3d 1291 (11th Cir. 2019) ("little trouble concluding" that both individual and organizational plaintiffs "have met Article III's injury requirement").

Further, Defendants make no substantive argument against the standing of the organizational plaintiffs, complaining only of the brevity of Plaintiffs' explanation.  Defs. Br. at 18 n.5.  But Plaintiffs identified the complaint's relevant allegations and authority supporting the organizations' standing based on injury to the organizations or their members.  Lewis Br. at 18 n.9.[2]  No more is required.

---

[2] The Lewis Plaintiffs' Opening En Banc Brief is cited herein as "Lewis Br."

## B.    Plaintiffs' Injuries Are Traceable To Defendants' Conduct

Defendants deny any connection between the Attorney General's acts and omissions and Plaintiffs' harms arising from the allegedly unconstitutional state law.  Instead, Defendants argue that it is Plaintiffs' *employers* who somehow "enforce" Act 2016-18's minimum wage preemption.  Defendants' argument overlooks the harm of unequal treatment inflicted when the Act was adopted.  It also overlooks fundamental principles of standing doctrine, including that actions *indirectly* causing harm are sufficient to establish traceability, *see Focus on the Family v. Pinellas Suncoast Trans. Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003), as are incremental steps in the chain of causation, *see Massachusetts v. EPA*, 549 U.S. 497, 523-24 (2007).

The snippet Defendants quote from *Lujan*—"independent action[s] of some third party not before the court" are insufficient to confer standing, Defs. Br. at 25 (quoting *Lujan*, 504 U.S. at 560)—cannot carry the weight of Defendants' theory.  That passage is a quotation from *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976), where defendant state officials were alleged to have merely "encouraged" third parties to harm plaintiffs, *id.* at 42.  Here, Plaintiffs allege that Act 2016-18 made it legally possible for their employers to pay them less than required by the City's Ordinance, and "the Supreme Court ... ha[s] repeatedly found causation where a challenged government action *permitted*

4

the third party conduct that allegedly caused a plaintiff injury, when that conduct would have otherwise been illegal." *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 442 (D.C. Cir. 1998) (en banc) (emphasis in original); *see, e.g.*, *Investment Co. Institute v. Camp*, 401 U.S. 617, 618-20 (1971) (companies had standing to challenge regulation that "authorize[d]," but did not require, banks to establish collective investment funds).

Defendants analogize this case to cases in which courts have held plaintiffs lack standing to challenge laws providing a private right of action. Defs. Br. at 20-21, 26. But this argument misapprehends the link between Plaintiffs' harm and Defendants' acts and omissions. Unlike the private right of action statutes at issue in the cases Defendants cite, Act 2016-18 harms Plaintiffs because it permits their employers to pay them less than they would be entitled to under Birmingham's ordinance (i.e., it is an obstacle to a legal entitlement to higher wages), and because it subjects them to unequal treatment under the law.[3] "[E]ven harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes," *Focus on the Family*, 344 F.3d at 1273, and thus the connection between the Act and Plaintiffs' harms here is sufficient. Of course,

---

[3] *Muskrat v. United States*, 219 U.S. 346 (1911), cited by Defendants, Defs. Br. at 27, is inapposite because plaintiffs there relied upon a statutory right of action that attempted to grant jurisdiction for the express purpose of obtaining an advisory opinion, in violation of Article III. *Id.* at 350, 361.

"[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561, and plaintiffs are "not required to prove causation beyond a reasonable doubt or by clear and convincing evidence." *Focus on the Family*, 344 F.3d at 1273.[4]

The private right of action cases are further distinguishable because in all of those cases the defendant public officials were powerless to enforce the challenged statutes. For example, in *Okpalobi v. Foster*, the Fifth Circuit explained that officials could apply no "coercive effect" harming abortion providers under a statute providing for tort liability, because "a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." 244 F.3d 405, 426 (5th Cir. 2001) (en banc); *see also Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015); *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001).[5]

---

[4] Defendants oddly argue that Plaintiffs cannot satisfy the causation requirement because they allege the Act denies them "benefits" instead of inflicting a harm. Defs. Br. at 25. This is nothing more than semantics: deprivation of a benefit—here, extinguishing an existing entitlement to higher wages—is a harm. *Cf. Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 111-15 (1979) (deprivation of economic and noneconomic benefits associated with interracial communities constitutes sufficient injury to accord plaintiffs Article III standing).

[5] Defendants wrongly suggest that the Eighth Circuit's decision in *Digital Recognition Network* demonstrates that Plaintiffs cannot rely on *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006), *abrogated on other grounds by Obergefell v. Hodges*, 135 S.Ct. 2584 (2015). But *Bruning* is like this case in

6

Here, by contrast, the presence of Act 2016-18 on the books preempts Birmingham's Ordinance, even absent enforcement action. *See Wilson v. Stocker,* 819 F.2d 943, 947 (10th Cir. 1987) ("[A] plaintiff challenging the constitutionality of a state statute has a sufficiently adverse legal interest to a state enforcement officer … to create a substantial controversy when … the plaintiff shows an appreciable threat of injury flowing directly from the statute."). Moreover, at oral argument before the panel Defendants *conceded* that, unlike the defendants in the private right of action cases, here the Attorney General has power to initiate a lawsuit to enforce the Act, *Lewis*, 896 F.3d at 1290; *see also* Lewis Br. at 19, and Defendants do not now contest his authority to do so.[6]

---

that it concerned a state law that "function[ed] as a barrier to the government action that [plaintiffs] desire[d]." 455 F.3d at 864. It did *not* concern a private right of action, which was the basis for the court's holding in *Digital Recognition Network*. 803 F.3d at 958. Indeed, the Eighth Circuit distinguished the "broad" enforcement authority of the Nebraska attorney general in *Bruning*—which mirrors that of the Attorney General here, *see* Lewis Br. at 22—with the absence of such authority in *Digital Recognition Network*. 803 F.3d at 961.

[6] This case is nothing like *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003), where the Attorney General had already conceded the unconstitutionality of the state law at issue.

CIR argues that the ability to enforce state law cannot support traceability, CIR Br. at 10-11, but in each of the cases CIR cites, the state defendants actually *lacked* enforcement authority. *See 1st Westco Corp. v. School District of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993) (challenged statute "charges [local officials], not the Commonwealth Officials, with enforce[ment]"); *S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 614 (9th Cir. 1980) ("[A]ttorney general lacked authority to prosecute . . . and . . . no other injury was shown."); *Shell Oil Co. v. Noel*, 608 F.2d 208, 212-13

Defendants emphasize that the Attorney General did not pass the Act, Defs. Br. at 19, but that is true in every case in which a state Attorney General is named as a defendant in a civil rights lawsuit challenging unlawful state practices. *See* Lewis Br. at 20 (collecting cases). Here, the specter of enforcement by the Attorney General, as well as his failure to perform his statutory duty to notify the Legislature and Governor of the Act's unconstitutionality, contributed to Plaintiffs' equal treatment and economic harms. *See Digital Recognition Network*, 803 F.3d at 961 ("threat of … enforcement surely played an important role in discouraging [contrary] legislation and gave [the challenged law] … the effect challenged by plaintiffs"); *Massachusetts*, 549 U.S. at 523-24 (causation established when agency's refusal to regulate greenhouse gas emissions contributed to alleged injuries from global warming).[7]

Similarly, Birmingham has contributed to Plaintiffs' injuries by failing to enforce its Ordinance—failing to take administrative steps to implement the Ordinance and abdicating responsibility to investigate and prosecute non-

---

(1st Cir. 1979) (state officials' authority to enforce challenged law "not settled" under state law and federal court declines to resolve question in first instance). Nor do any of these cases support CIR's sweeping claim that official advice or other official acts or omissions cannot support traceability.

[7] Defendants' suggestion that *Massachusetts v. EPA* should be disregarded because of the nature of the EPA's duty, Defs. Br. at 25 n.7, is not well taken. For causation, the question is simply whether the act or omission contributed to plaintiff's injury.

complying employers—as a result of Act 2016-18. *See* ER045 (City is not enforcing Ordinance "because of Act 2016-18"); Birmingham Br. at 9-10 (City ceased enforcement efforts after passage of Act and "but for" Act 2016-18, would be enforcing Ordinance).

### C.    Plaintiffs' Injuries Are Redressable

Defendants' redressability argument ignores the practical effect of the relief sought. Indeed, Defendants' redressability argument is premised on the incorrect notion that Plaintiffs must show that the requested relief will bind their employers and Alabama state courts, and guarantee compliance with Birmingham's Ordinance. Defs. Br. at 29-31. But that is not the standard. Plaintiffs must allege only "*a significant increase in the likelihood*" that a decision in their favor would "redress[] the injury suffered." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (internal quotation marks omitted) (emphasis added); *accord Lujan*, 504 U.S. at 561.

Thus, the Supreme Court has held that redressability is a matter of "practical consequence," not inevitable effect. *Utah v. Evans*, 536 U.S. 452, 464 (2002). In *Utah v. Evans*, the Supreme Court considered Utah's argument that it was harmed by the Secretary of Commerce's method of supplementing census data, which allegedly resulted in a House of Representatives seat being allocated to North Carolina instead of Utah. *Id.* at 458-59. The Court acknowledged that the

9

Secretary's new report would not necessarily "contain a different conclusion about the relative populations of North Carolina and Utah," but still held that declaratory or injunctive relief would likely redress Utah's alleged harm because "[t]he practical consequence of ... [the new report] would amount to a significant increase in the likelihood that [Utah] would obtain relief that directly redresses the injury suffered." *Id.* at 463, 464; *see also Federal Elec. Comm'n v. Akins*, 524 U.S. 11, 25 (1998) (standing to seek declaratory relief designating organization a "political committee" subject to reporting requirements because, even though agency retained power not to order reporting, such designation would make agency more likely to require reporting); *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (Opinion of O'Connor, J.) (declaratory relief may redress harm, even though relevant officials "would not be directly bound by such a determination").

In this case, the practical consequence of declaratory relief confirming the unlawfulness of Act 2016-18, as well as injunctive relief directing the Attorney General not to enforce the Act and to give notice to Alabama legislators and the public of the Act's unlawfulness, and directing the City of Birmingham to enforce the city's minimum wage Ordinance, ER085-86,[8] would make it more "likely" that

---

[8] CIR argues that the district court cannot compel the City to exercise prosecutorial discretion. CIR Br. at 21. But the court may certainly enjoin the City's abdication of its responsibility to enforce the Ordinance. *See Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C. Cir. 1973) (plaintiffs, by challenging policy that was "in effect

Plaintiffs' injuries will be redressed. *Lujan*, 504 U.S. at 561.[9] Defendants'

assertion that Plaintiffs must show that Alabama courts and private employers

would be bound by a federal court's declaratory judgment is wrong. The only

question is whether such a judgment would make it more likely that the Act would

not be enforced and that Birmingham would enforce its Ordinance, which it

certainly would. *Cf. Utah*, 536 U.S. at 464 (courts presume parties will "abide by

an authoritative interpretation of [a] … constitutional provision") (quoting

*Franklin*, 505 U.S. at 803 (opinion of O'Connor, J.)).[10]

---

an abdication of [defendant's] statutory duty," did not interfere with prosecutorial discretion). Moreover, the court can direct the City to take administrative steps required by the Ordinance that will support private enforcement. ER122 (Mayor "shall" designate official to annually announce adjusted rates, which "shall" be published in a bulletin).

[9] CIR suggests that declaratory and injunctive relief cannot be based wholly on past conduct, CIR Br. at 14, but Plaintiffs' injury of lower wages is ongoing. ER073. CIR further argues, as to the injunctive—but not declaratory—relief sought, that recoupment of back wages from an employer is an "adequate remedy at law." CIR Br. at 26. But again, the harm here is ongoing and Plaintiffs' claims are not limited to a request for back wages. An injunction requiring the Attorney General not to enforce Act 2016-18 and to inform all parties that a court has declared the Act unconstitutional would make it more likely that ongoing harms to Plaintiffs and organizational Plaintiffs' members would be remedied. *See Missouri v. Jenkins,* 515 U.S. 70, 88 (1995) (injunctive remedy must be tailored to the "nature and scope of the constitutional violation") (citation and internal quotation marks omitted).

[10] In *Nova Health v. Gandy*, 416 F.3d 149 (10th Cir. 2005), cited by Defendants, Defs. Br. at 29, the plaintiff's injury was lost business resulting from changes to company policy due to a statute providing a private right of action against abortion providers. *Id.* at 1155. The court held that "a judgment enjoining *only* . . . [certain

11

These cases are entirely consistent with this Court's decision in *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999), stating that redressability is satisfied when "a favorable ruling could result in a declaratory judgment against the Attorney General holding the [State] statute invalid." *Id.* at 887 n.6. *Stincer* concerned a challenge to a Florida statute that permitted health care providers to withhold from mental health patients their own medical records. As here, declaratory relief against the Florida Attorney General in *Stincer* would make it more likely that affected patients could obtain their medical records because state officials and private actors are likely to abide by the court's interpretation of the law. *See id.* at 889 (observing that attorney general "may be the proper defendant in a declaratory decree action challenging the validity of a Florida statute," even though he lacks enforcement authority) (Roney, J., concurring).

Defendants offer no response to *Stincer* other than to label it dicta. Defs. Br. at 31-32. But *Stincer*'s well-reasoned approach is consistent with Supreme Court

---

potential claimants] from filing suit" would not redress plaintiff's injury because "there would still be a multitude of other prospective litigants who could potentially sue." *Id.* at 1158-59 (emphasis in original). Here, by contrast, if the individual Plaintiffs' employers comply with the Ordinance, those Plaintiffs' economic injuries will be redressed; if only some employers pay the higher wage, the injuries of the organizational Plaintiffs' members will be mitigated. *Meese v. Keene,* 481 U.S. 465, 476–77 (1987) (partial relief qualifies as redress for standing purposes). Moreover, *Nova Health* was not decided on a motion to dismiss. *Id.* at 1159.

authority holding that redressability is a matter of "practical consequence." *Utah*, 536 U.S. at 464.

>  **II.   The Alabama Attorney General Is A Proper Defendant Under *Ex Parte Young***
>
>  **A.  The Alabama Attorney General Has A Sufficient Connection To The Act To Be A Proper Defendant**

Defendants invite this Court to undermine the basic principles of *Ex Parte Young*, 209 U.S. 123 (1908), without which "the entire class of modern civil rights litigation would be excluded from the federal courts." John C. Jefferies, Jr. et al., Civil Rights Actions: Enforcing the Constitution 7 (2d ed. 2007).

It is no accident that Defendants focus not on *Ex Parte Young*, but on the Court's prior decision in *Fitts v. McGhee*, 172 U.S. 516, 525 (1899). Defs. Br. at 33-35. In *Fitts*, the Supreme Court considered an Alabama statute enforced exclusively by private right of action. 172 U.S. at 518. *Ex Parte Young* distinguished *Fitts* because in that earlier case "[t]he penalties ... [imposed by the challenged state law] were to be collected by ... [private parties]. No officer of the state had any official connection with the recovery of such penalties." 209 U.S. at 156. This case is not like *Fitts* because the Attorney General here *does* have authority to enforce Act 2016-18, as Defendants conceded. *Lewis*, 896 F.3d at 1290.

13

To the extent Defendants imply that something more than a general authority to enforce the challenged law is required, that contention is squarely rejected by *Ex Parte Young*, which held: "The fact that the state officer, by virtue of his office, has *some connection* with the enforcement of the act, is the important and material fact, and *whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists*." 209 U.S. at 157 (emphases added); *see also id.* at 158 (connection "might exist by reason of the general duties of the officer to enforce … [the challenged law] as a law of the state").

Defendants' argument comes down to their theory that "enforcement of the Act is the responsibility of private parties like Plaintiffs' employers, who would raise the Act as a preemption defense to suits based on local wage or labor laws." Defs. Br. at 37 (internal quotation marks omitted). But private employers do not "enforce" Act 2016-18 merely by relying on it to ignore Birmingham's minimum wage Ordinance any more than private citizens enforce the State's criminal laws by conforming their conduct to the law.[11] And, unlike the state laws challenged in *Fitts* and *Summit Medical*, Act 2016-18 does not provide a private right of action to enforce its minimum wage preemption. It is absurd for Defendants to argue that

---

[11] Indeed, to Plaintiffs' knowledge, no such preemption defense based upon Act 2016-18 has been raised, yet Act 2016-18 has had its intended effect.

14

the Attorney General is not a proper defendant under *Ex Parte Young* for a state

law that he acknowledges he has the authority to enforce.

Defendants' reliance on *Women's Emergency Network v. Bush*, 323 F.3d

937 (11th Cir. 2003), is misplaced because the Court there did not hold that a

Governor's general executive power is never enough to make him a proper

defendant. Rather, the Court reasoned that "[w]here the enforcement of a statute is

the responsibility of parties other than the governor (the cabinet in this case), the

governor's general executive power is insufficient to confer jurisdiction." *Id.* at

949-50. Here, Plaintiffs have sued the cabinet official directly responsible for

enforcing Act 2016-18, the Attorney General.

### B. Enforcement Need Not Have Commenced For The Attorney General To Be A Proper Defendant

Defendants ask this Court to overrule its precedent holding that, under *Ex*

*Parte Young*, "plaintiffs could sue state officials based on 'only the responsibilities

such officers have in their status as state officials ...' even if the officials have not

'undertaken or ... threatened to undertake'" any enforcement action under the

challenged state law. Defs. Br. at 40 (quoting *Summit Medical Assoc. v. Pryor*,

180 F.3d 1326, 1337 (11th Cir. 1999)). They identify no compelling reason to do

so.

This Court's well-reasoned decision in *Summit Medical Associates* held that

*Ex Parte Young* does not require "that the enforcement of the allegedly

15

unconstitutional state statute actually must be in progress against the particular plaintiffs initiating suit." 180 F.3d at 1338. Rather, "the ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature ... and cases where the relief is retrospective." *Id.*

Defendants argue that other courts have adopted their preferred reading of *Ex Parte Young*, Defs. Br. at 41 (citing Fifth Circuit plurality decision in *Okpalobi*, 244 F.3d at 415 (collecting cases)), but they overstate those decisions. Defendants present *Okpalobi* and the cases it cites out of context: those "cases are concerned with plaintiffs circumventing the Eleventh Amendment … by suing *any* state executive official. That is, they are concerned with the question of 'who' rather than 'when.'" *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-47 (9th Cir. 2002) (collecting cases); *see also Okpalobi*, 244 F.3d at 429 n.1 ("The opinion's treatment of *Ex Parte Young* and the Eleventh Amendment is not supported by a majority of the court.") (Higginbotham, J., concurring). Because "Article III and prudential ripeness requirements ... are tailored to address problems occasioned by an unripe controversy[,] [t]here is … no need to strain *Ex Parte Young* doctrine to serve that purpose." *Nat'l Audubon Soc'y*, 307 F.3d at 847.

The instant case illustrates why it makes no sense to impose an additional ripeness requirement on the *Ex Parte Young* doctrine. In most cases, an unconstitutional law inflicts harm when enforced in a civil or criminal action; here,

16

Act 2016-18's enactment inflicted the harm of unequal treatment and an additional economic injury arises when other parties comply with the unconstitutional state law. *See supra* at 2-3.    The Attorney General's acknowledged authority to enforce the Act and his willingness to do so was sufficient to deter the City from implementing its minimum wage law, *see* Birmingham Br. at 10, and embolden Birmingham employers to ignore the City's law, ER044, 73.[12]

In *Okpalobi*, Judge Higginbotham expressed his "fear that imposing this additional duty upon *Ex parte Young* by bringing it forward to the front of the case or controversy inquiry," which is what Defendants seek to do here, "pushes the doctrine toward an amorphous, case-by-case inquiry into its availability—a destination affirmatively rejected by seven members of the United States Supreme Court."  244 F.3d at 432 (Higginbotham, J., concurring) (citing *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 288, 291 (1997)).  Reading a ripeness requirement into *Ex Parte Young*—beyond Article III's case-and-controversy requirement—has no support in Supreme Court precedent.[13]

---

[12] The Attorney General signaled his willingness to enforce the Act when he informed Birmingham employers that they would not have to comply with the City's minimum wage law.  ER044.

[13] Should the Court find that Plaintiffs' claims are non-justiciable, it should affirm dismissal on that ground alone and remand to the district court with instructions to dismiss without prejudice. *See Boda v. United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter

### III.    Plaintiffs' Complaint Adequately Alleges Equal Protection Violations

Defendants are correct that assessing whether a legislative body has acted with discriminatory intent is "difficult."  Defs. Br. at 46.  Precisely because of the complex nature of the inquiry, the Supreme Court has set out guideposts, identifying relevant factors, *see Village of Arlington Heights v. Metropolitan Development Corp.*, 429 U.S. 252 (1977), and has cautioned that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," *id.* at 266.  That the inquiry is difficult, and often uncomfortable, does not absolve courts of the obligation to undertake it.

The "plausibility" analysis on a motion to dismiss is evaluated in light of this legal framework.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).  Here, Plaintiffs allege facts going to each of the factors identified by *Arlington Heights*, Lewis Br. at 42-49, plausibly asserting that racial discrimination was "a motivating factor" for Act 2016-18.  *Arlington Heights*, 429 U.S. at 265-66 (plaintiffs need not show that discrimination was the "sole[]," or even the "primary" motive).  Defendants'

---

jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds.  This dismissal is without prejudice."); *see also Enders v. Florida*, 535 F. App'x 799, 803 (11th Cir. 2013) (dismissal because of nonjusticiability "is necessarily without prejudice").

arguments to the contrary, which mirror the faulty reasoning of the district court, fail to accept Plaintiffs' allegations as true and ask the Court to draw inferences in *Defendants'* favor, ignoring the standard by which a motion to dismiss is assessed. *See City of Miami v. Wells Fargo & Co.*, __ F.3d __, 2019 WL 1966943, at 17 n.6 (11th Cir. May 3, 2019) ("[D]iscounting the feasibility of ... [plaintiff's] analysis on the front end is inconsistent with our obligation to draw all reasonable inferences in … [plaintiff's] favor at this preliminary stage.").

For example, Defendants argue that "twenty-two other States have enacted similar laws." Defs. Br. at 43. Of course, Defendants cannot defeat Plaintiffs' claims at the pleading stage by pointing to studies or economic theories the Legislature did not consider. ER083 ("Legislature cited no economic studies in support of [Act 2016-18]"). But even if Alabama was motivated, in part, by the same economic policy justifications as those other states, Act 2016-18 is unconstitutional if it was motivated, in any part, by discriminatory motives. *Arlington Heights*, 429 U.S. at 265-66; *see also Lewis*, 896 F.3d at 1296 (whether Legislature would have made same decision absent an improper motive requires "a factual demonstration which cannot be settled on [Plaintiffs'] motion to dismiss").

Defendants do not contest that Plaintiffs adequately allege that Act 2016-18 has a discriminatory effect in Birmingham. Defs. Br. at 45; *see also* ER047-48, ER073, ER081. Rather, they argue that discriminatory effect should be assessed

19

statewide.  Defs. Br. at 45-46.  This is wrong for three reasons.  First, Defendants acknowledge that Act 2016-18 specifically targeted Birmingham in that the law was a "response" to Birmingham's minimum wage law.  Defs. Br. at 3-4; *see also Lewis*, 896 F.3d at 1295 ("[I]t was not 'cherry picking' for the plaintiffs to focus on Birmingham, the community at which the law was primarily directed and where its impact was most transparent.").  Second, Birmingham is the only political subdivision in Alabama to have raised its minimum wage and is, thus, the only city in which Act 2016-18's preemption had an immediate effect.  ER047.  Third, discriminatory effects within a discrete area may be evidence of a discriminatory purpose.  In *Arlington Heights*, "[t]he Court did not require those minority plaintiffs to show that the Chicago area as a whole lacked low-income housing or that the plaintiffs had no other housing options.  Instead, it was sufficient that the zoning decision excluded them from a particular area."  *N. Carolina State Conf. NAACP v. McCrory*, 831 F.3d 204, 230 (4th Cir. 2016); *see also Keyes v. Sch. Dist. No. 1, Denver, Co.*, 413 U.S. 189, 208 (1973) (finding of intentional racial discrimination "in a meaningful portion of a school system").

Defendants argue that "too many white workers are affected to allow an inference that the law was a pretext for purposeful discrimination against black workers."  Defs. Br. at 51; *see also* Texas et al. Amici Br. at 15-16.  But the portion of *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256

(1979), which Defendants cite concerns whether a facially neutral statute was actually a covert gender-based classification, *id.* at 274.  The Court was clear that even if the statute did not amount to a gender-based classification, it would still be unconstitutional if "a gender-based discriminatory purpose has, at least in some measure, shaped the [legislation]."  *Id.* at 276.  This makes sense because the law recognizes "disproportionate" impact, not just situations when *only* minorities are impacted.  *Arlington Heights*, 429 U.S. at 265-66.[14]

Defendants remarkably ask this Court to break with the Fifth Circuit and hold that claims of intentional racial discrimination by a legislative body are subject to a heightened standard of proof and that, even at the pleading stage, "'only the clearest proof will suffice' to establish an illicit motive."  Defs. Br. at 47 (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003)); *see also* Texas Br. at 10-12.  But, as Plaintiffs explained, Lewis Br. at 55-56, the "clearest proof" standard is "grafted" from another line of cases—those concerning challenges to "criminal punishment through a civil law when the law faces an *ex post facto* challenge," *Veasey v. Abbott*, 830 F.3d 216, 230 n.12 (5th Cir. 2016) (plurality opinion), and

---

[14] Texas amici argue that "[t]he marginal difference in *the percentage* of workers affected cannot support an inference" of purposeful discrimination, Texas Br. at 16 (emphasis added), failing to appreciate the disproportionate impact on African-Americans, who comprise three-quarters of Birmingham's population.  ER048.

"[t]he Supreme Court has not applied this standard in the voting rights context,"

*id.*[15]  Indeed, neither Defendants nor amici have cited any case applying the

"clearest proof" standard in the voting rights or Equal Protection context.[16]

It makes sense that the Supreme Court would require a higher standard of

proof to "*override* legislative intent and transform what has been denominated a

civil remedy into a criminal penalty."  *Smith*, 538 U.S. at 92 (internal quotation

mark omitted) (emphasis added).  As the Court explained in *Smith*, the "clearest

proof" standard is applied not simply to assess legislative intent, but to determine

whether a law is so inherently punitive "either in purpose or effect as to *negate* [the

State's] intention to deem it civil."  *Id.* (quoting *Kansas v. Hendricks*, 521 U.S.

346, 361 (1997)) (emphasis added).  Application of this stricter standard of proof

for all discrimination claims (which do not involve an inquiry into the punitive

effect of legislative action) would upend decades of precedent and create an

---

[15] The "clearest proof" formulation originated in *Flemming v. Nestor*, 363 U.S. 603 (1960), which concerned the constitutional prohibitions on ex post facto laws, bills of attainder and punishment without trial.  *Id.* at 613.  The Court explained that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."  *Id.* at 617.

[16] In neither of the two outlier cases identified by the Texas amici in which courts have cited the *Flemming* "clearest proof" standard outside of the ex post facto law context, did the court acknowledge that the standard originated in another context or explain why its application was warranted.  *See Whole Woman's Health v. Lakey*, 769 F.3d 285, 295 (5th Cir. 2014); *Ambassador Books & Video, Inc. v. City of Little Rock*, 20 F.3d 858, 863 (8th Cir. 1994).

impermissible heightened pleading standard for such cases. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) ("[T]here is no heightened pleading standard as it relates to cases governed by Rule 8(a)(2), including civil rights complaints.") (internal quotation marks omitted).

Both Defendants and the Texas amici also repeatedly assert that the good faith of the Alabama Legislature must be presumed. Defs. Br. at 1, 44, 46; Texas Br. at 4, 9-10. To be sure, that presumption will apply when the district court ultimately weighs the evidence before it. But it is not grounds to dismiss this case at the pleading stage. *See* 5B Wright & Miller, *Federal Practice & Procedure* §1357 (3d ed. 2019) ("[P]resumptions are evidentiary standards that are inappropriate for evaluation at the pleadings stage."). Indeed, *Abbott v. Perez*, 138 S.Ct. 2305 (2018), on which Defendants and Texas amici rely, applied the presumption in assessing the evidence after trial.

Here, Plaintiffs allege facts going to every one of the factors identified by *Arlington Heights*. Lewis Br. at 42-49. Defendants are simply wrong when they argue that the Panel relied on only three allegations in finding Plaintiffs' Equal Protection claim plausibly pleaded. Defs. Br. at 14. The Panel noted "detailed" factual allegations indicating that the Act: (i) specifically targeted a majority-black city "which represents more black citizens (and more black citizens living in poverty) than any other city in Alabama"; (ii) had a disproportionate racial impact

23

within that city; (iii) was enacted after prior Legislative indifference to the issue; (iv) was fast-tracked "with little or no opportunity for public comment or debate"; (v) was the subject of racially polarized debate and voting within the Legislature; and (vi) was consistent with "Alabama's historical use of state power to deny local black majorities authority over economic decision-making."  896 F.3d at 1295.

Defendants dismiss Plaintiffs' allegations concerning Alabama's history of discriminatory action because much of it is not "reasonably contemporaneous." Defs. Br. at 50-51.  But even distant history has some relevance, *see N.C. State Conf. NAACP*, 831 F.3d at 223, and, regardless, Plaintiffs also allege *recent* history supporting an inference that Act 2016-18 was racially motivated.  *See* Lewis Br. at 44-45 (reconstitution of Birmingham Water Board, ER064, legislative redistricting, ER062-63, and an immigration bill that a federal court held to be motivated by racial animus, ER065-66).[17]  That Plaintiffs allege that Act 2016-18 is the latest in a series of State actions, both recent and historical, makes their allegations *more* plausible, not less so.

---

[17] Contrary to Defendants' assertion, Defs. Br. at 51 n.9, the complaint clearly alleges that restructuring the Birmingham Water Board was part of a pattern of "suppress[ing] . . . local black majorities through imposition of white control by state government."  ER049; *see also* ER064-65.

24

Defendants argue that there is no allegation that the "timing or procedures were improper or even uncommon," with respect to Act 2016-18.  Defs. Br. at 52 (internal quotation marks omitted).  But the complaint repeatedly alleges that the bill was "fast-tracked," ER069-70,[18] that the Legislature ignored the Alabama Constitutional requirement of local notice, ER071-72,[19] and "[t]he Alabama legislative committees considering HB 174 deviated from normal practices with respect to the consideration of legislation by, inter alia, failing to give the public proper information on the scheduling of hearings, failing to allow public testimony at the Senate hearing, and by rushing the bill to final votes and the Governor's signature after years of indifference to the issue."  ER083.

This Court need decide only whether Plaintiffs' Equal Protection claim is plausibly pleaded.  *See City of Miami*, 2019 WL 1966943, at *26 ("We repeat that we have not answered every outstanding question in this case.  Much remains to be determined as the litigation proceeds, but this case is before this Court only on a

---

[18] *Abbott*, cited by Defendants, Defs. Br. at 51, does not hold that fast-tracking a bill cannot be circumstantial evidence of improper motive.  Rather, it concludes that in that case the bill was not actually rushed.  138 S.Ct. at 2329 & n.23.

[19] Defendants take issue with Plaintiffs' allegation that required notice of the Act was not provided, Defs. Br. at 52 n.11, but the Alabama Constitution clearly provides that a "general law which *at the time of its enactment* applies to only one municipality of the state" is subject to the local notice requirement, Ala. Const. Art. IV, §110 (emphasis added), and at the time of Act 2016-18's enactment, Birmingham was the only municipality in Alabama immediately affected.  ER047.

25

motion to dismiss.").  To close the courthouse door would have far-reaching

consequences because in this day and age, when "legislators [rarely] announc[e] an

intent to discriminate based upon race, whether in public speeches or private

correspondence," *Veasey*, 830 F.3d at 235, it is hard to imagine what more

plaintiffs could allege.[20]

## CONCLUSION

For the foregoing reasons, and for the reasons explained in Plaintiffs' prior

briefing and the panel opinion, the decision below should be reversed.

Respectfully submitted,

Dated:  May 15, 2019

/s/ Barbara J. Chisholm
Barbara J. Chisholm

Barbara J. Chisholm, Esq.
Eric P. Brown, Esq.
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
bchisholm@altber.com
ebrown@altber.com

Joe R. Whatley, Jr., Esq.
2001 Park Place North
1000 Park Place Tower

Mary Joyce Carlson, Esq.
1100 New York Avenue, N.W.
Suite 500 West
Washington, DC 20005
Telephone: (202) 230-4096
carlsonmjj@yahoo.com

Robert H. Stroup, Esq.
LEVY RATNER, P.C.
80 Eighth Avenue, 8th Floor
New York, NY 10011

---

[20] The Texas amici complain that allowing Plaintiffs to proceed beyond the pleading stage could subject Defendants to discovery.  Texas Br. at 4-8.  But the appropriate scope of discovery is a case management matter within the sound discretion of the district court; it has no bearing on the pleading standard.

Birmingham, AL 35203
Telephone: (205) 488-1226
jwhatley@whatleykallas.com

Telephone: (212) 627-8100
rstroup@levyratner.com

Glen M. Connor, Esq.
George N. Davies, Esq.
Richard P. Rouco, Esq.
QUINN, CONNOR, WEAVER,
DAVIES & ROUCO LLP
2 – 20th Street North, Suite 930
Birmingham, AL 35203
Telephone: (205) 870-9989
gconnor@qcwdr.com
gdavies@qcwdr.com
rrouco@qcwdr.com

*Counsel for Plaintiffs-Appellants Marnika Lewis, Antoin Adams, Alabama State Conference of the National Association for the Advancement of Colored People, and Greater Birmingham Ministries.*

27

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B)(ii), because this brief contains 6,419 words, excluding

the parts of the brief exempted by 11th Cir. R. 32-4.


Dated:  May 15, 2019                        /s/ Barbara J. Chisholm
                                            BARBARA J. CHISHOLM
                                            ALTSHULER BERZON LLP
                                            177 Post Street, Suite 300
                                            San Francisco, CA  94108
                                            Tel:    (415) 421-7151
                                            Fax:    (415) 362-8064
                                            bchisholm@altber.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2019, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the counsel of record in this matter.  On that same date, I caused

physical copies of the foregoing to be filed with the Clerk of Court and served

upon the following counsel by U.S. First Class Mail:

James W. Davis
William Glenn Parker, Jr.
State of Alabama Attorney General's Office
501 Washington Ave
PO BOX 300152
Montgomery, AL 36130-0152

*Counsel for Defendants-Appellees State of Alabama and Alabama Attorney General Steve Marshall*

Fredric L. Fullerton, II
Kayla S. Lawrence
City of Birmingham Law Department
710 N 20th Street, Fl. 6
Birmingham, AL 35203

*Counsel for Defendants-Appellees City of Birmingham and Mayor Woodfin*


Dated:  May 15, 2019

/s/ Sally Mendez
Sally Mendez