**Appeal No. 17-11009**

_____

**United States Court of Appeals
For The Eleventh Circuit**

_____

Marnika Lewis, *et al.*

*Plaintiffs-Appellants*,

v.

State of Alabama, *et al.*

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Case No. 2:16-cv-690-RDP

**PROPOSED EN BANC AMICUS BRIEF OF THE CENTER
FOR INDIVIDUAL RIGHTS IN SUPPORT
OF APPELLEES**

Michael E. Rosman
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave. NW, Suite 625
Washington, D.C. 20036
(202) 833-8400

Attorney for Proposed Amicus

*Lewis v. Alabama,* Appeal No. 17-11009

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel certifies that, in addition to persons named in the Certificates of Interested Persons included with the parties' briefs and *en banc* briefs, the following persons or entities may have an interest in the outcome of the litigation.

1.    Center for Individual Rights (amicus)

2.    Michael Rosman (attorney)

None of the foregoing is a publicly traded company.  Plaintiff Center for Individual Rights is a non-profit corporation organized under the laws of the District of Columbia.

*/s/ Michael E. Rosman*
Michael E. Rosman
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave. NW, Suite 625
Washington, DC 20036
(202) 833-8400

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement of Interest Of *Amicus* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues Addressed In This *Amicus* Brief . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      I.      PLAINTIFFS LACK STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            A.     Injury In Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            B.     Traceability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            C.     Redressability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      II.     PLAINTIFFS HAVE AN ADEQUATE REMEDY IN STATE

            COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      III.    THE ELEVENTH AMENDMENT PRECLUDES SUIT

            AGAINST THE ATTORNEY GENERAL . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Table of Authorities

Cases

*1st Westco Corp. v. School District of Philadelphia*, 6 F.3d 108 (3d Cir.

1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14, 27, 28

*Allen v. Wright*, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Children's Healthcare Is A Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th

Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Coalition for Economic Equity v. Wilson*, 122 F.3d 692 (9th Cir. 1997) . . . . . . . . 1

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir.

2006), *motion to vacate stay denied*, 549 U.S. 1176 (2007) . . . . . . . . . . . 1

*Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008) . . . . . . . . . . . . . . . . . . . . . 19

*Ex Parte Young*, 209 U.S. 123 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26, 28

*Federal Communications Comm'n v. ITT World Communications*, Inc., 466

U.S. 463 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Glass v. Birmingham Southern R. Co.*, 905 So. 2d 789 (Ala. 2005) . . . . . . . . . . 23

\* *Gras v. Stevens*, 415 F. Supp. 1148 (S.D.N.Y. 1976) (3-judge court) . . . . . . . 26

*Hope Clinic v. Ryan*, 249 F.3d 603 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 9

*Laroque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . 1

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

\* *Lockhart v. Fretwell*, 506 U.S. 364 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . 21-23

\* *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . 5, 6, 9, 19, 23

*Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*NAACP v. City of Kyle, Tex.*, 626 F.3d 233 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . 8

\* *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005) . . . . . 10, 18, 19

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 9, 27

*R.W.T. v. Dalton*, 712 F.2d 1225 (8th Cir. 1983), *abrogated on other*

      *grounds*, *Kaiser Aluminum & Chemical Corp. v. Bonjourno*, 494 U.S. 827

      (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979) . . . . . . . . . . . . . . . . . 10, 11, 14

*Smith v. Winter*, 717 F.2d 191 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Snoeck v. Brussa*, 153 F.3d 984 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Southern Pacific Transp. v. Brown*, 651 F.2d 613 (9th Cir. 1980) . . . 11, 12, 14, 28

*Steffel v. Thompson*, 415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States ex rel. Lawrence v. Woods*, 432 F.2d 1072 (7th Cir. 1970) . . . . . . 22

*United States v. Morrison*, 529 U.S. 598 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Nagarwala*, 350 F. Supp. 3d 613 (E.D. Mich. 2018) . . . . . . . . . . 1

*United States v. Richardson*, 418 U.S. 166 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Washington v. Seattle School District No. 1*, 458 U.S. 457 (1982) . . . . . . . . . . . 17

Constitutional Provisions, Statutes, and Regulations

28 U.S.C. § 1443(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-25

Act No. 2016-18  . . . . . . . . . . . . . . . . . . . . . . 2-4, 7, 8, 12-18, 20, 21, 23, 24, 26

Birmingham Ordinance No. 16-28  . . . . . . . . . . . . . . . . . . . . 2-4, 6-8, 13-17, 24, 26

U.S. Const., amend. XI  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 26, 28

U.S. Const., art. III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 6, 9

Other

*  David L. Shapiro, *State Courts And Federal Declaratory Judgments*, 74

Northwestern L. Rev. 759 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Michael C. Dorf, *Facial Challenge To State And Federal Statutes*, 46 Stan.

L. Rev. 235 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Statement of Interest Of *Amicus*

The Center for Individual Rights ("CIR") is a non-profit public interest law firm based in Washington, D.C.   It has a strong interest in federalism-related issues.  It represented respondent Anthony Morrison in *United States v. Morrison*, 529 U.S. 598 (2000), in which the Court considered the limits of Congress's enuerated powers, and it currently represents a defendant in an appeal to the Sixth Circuit Court of Appeals of the court's order in *United States v. Nagarwala*, 350 F. Supp. 3d 613 (E.D. Mich. 2018), which raises very similar issues regarding enumerated powers.  It represented plaintiffs in *Laroque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011), a case challenging Section 5 of the Voting Rights Act on (*inter alia*) enumerated powers and federalism grounds.

CIR also represented intervening defendants in *Coalition for Economic Equity v. Wilson*, 122 F.3d 692 (9th Cir. 1997) and *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006), *motion to vacate stay denied*, 549 U.S. 1176 (2007), which involved constitutional challenges to California's Proposition 209 and Michigan's Proposal 2, respectively.  Both of those cases challenged the relevant state laws with a variation of the "political process" theory that appellants rely upon in this litigation to challenge Alabama's Act 2016-18.

This *amicus* brief focuses on the first two questions identified in this Court's

February 12, 2019 letter regarding *en banc* briefs: standing and the viabilitiy of

suing the Alabama Attorney General under *Ex Parte Young*, 209 U.S. 123 (1908)

in this lawsuit.  As set forth in its brief, CIR believes that these issues implicate

important federalism issues as well, one of the most significant being that state

courts have the same obligation to interpret the U.S. Constitution and other federal

law as does the district court and this Court.  Moreover, as shown in the brief, state

courts most likely will be the final arbiters of whether Act No. 2016-18 is

constitutional.

Statement of Issues Addressed In This *Amicus* Brief

  1.  Do plaintiffs have Article III standing?

  2.  Is plaintiffs' lawsuit against the Attorney General of Alabama

prohibited by the Eleventh Amendment to the United States Constitution?

Summary of Argument

  Plaintiffs can achieve their professed objectives only when Birmingham

Ordinance No. 16-28 (the "Birmingham Ordinance") is enforced against

Birmingham employers who are paying their employees less than the amount

required by that law.  That will not happen in this lawsuit.  Birmingham employers

2

paying employees less than that are not parties to this lawsuit and, accordingly, will not be bound by any judgment of the district court in this lawsuit.

In a nutshell, that explains why plaintiffs lack Article III standing. They have sued defendants who simply cannot give them what they want. While they have proferred various complicated theories about how the defendants they have named may get them closer to the target of enforcing the Birmingham Ordinance against relevant Birmingham employers, these theories fail on many grounds. Most importantly, they fail to acknowledge that the relevant Birmingham employers are not likely to simply roll over and concede when sued. Not being bound by anything that the district court here says, they will assert Act 2016-18 as a defense and a court with actual jurisdiction over them will have to make the determination of whether Act 2016-18 is constitutional. *See* ALBC Pls.' En Banc Br. 33 (acknowledging that "a definitive ruling regarding black voters' equal rights can be obtained" in a subsequent lawsuit in which Birmingham employers would be named). That court, of course, will not be bound by the district court's conclusion any more than it would be bound by plaintiffs' or defendants' views on that question. In short, plaintiffs are asking for an advisory opinion. *E.g., Snoeck v. Brussa,* 153 F.3d 984, 988 (9th Cir. 1998) (dismissing lawsuit challenging the constitutionality of Nevada Supreme Court rules requiring confidentiality for

complaints against judges, and authorizing the sanction of contempt for disobedience of them, for lack of standing; "If the federal courts were to take this case, however, and rule on the merits of the controversy it would be no more than an advisory opinion. The Nevada Supreme Court does not need our advice whatever it might be. The remedy plaintiffs seek . . . lies not with the federal courts, but with the State of Nevada.") (footnote omitted).

All of which raises an interesting question. Why have the plaintiffs earning less than the amounts required by the Birmingham Ordinance not simply sued their employers? For that matter, why has the City of Birmingham – which, notably agrees with plaintiffs that the state statute that preempts the Birmingham Ordinance "fits a historical pattern of legislation that discriminates against African Americans" (ER0073, ER0097 (¶ 102)) – not taken steps to enforce the ordinance? The mystery is deepened by the allegation that there are apparently state law bases for challenging Act 2016-18 that are not (and presumably cannot be) made in the current lawsuit. ER0071-72 (¶¶ 95-96). It would be hard to exclude the possibility that plaintiffs, or their attorneys, are more interested in dragging Alabama's not-very-pretty history of race relations into public view than in achieving actual results.

Argument

Plaintiffs lack Article III standing because they have sued defendants who are not currently causing them any harm and who could not, in any event, redress their alleged injuries. For the same reason, the Alabama Attorney General is simply a substitute for the State of Alabama here and cannot be sued consistent with the Eleventh Amendment to the United States Constitution.

## I.    PLAINTIFFS LACK STANDING

Article III states that federal courts have jurisdiction over various "cases" and "controversies," and the Supreme Court has held that these words require various elements of justiciability, including "standing." *United States v. Richardson*, 418 U.S. 166, 171 (1974) (holding that the constitutional requirements of standing derive from the "case or controversy" language of Article III). Standing is perhaps the most important of the requirements in Article III. *Allen v. Wright*, 468 U.S. 737, 750 (1984).

There are three core requirements for standing: injury in fact, causation, and redressability. *Allen*, 468 U.S. at 751. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The level of evidence needed to support standing varies with the stage of proceedings. At the pleading stage, general factual allegations of

5

injury resulting from defendants' conduct may suffice.  *Id.*

A.    Injury In Fact

Although no precise definition exists that would easily resolve whether an injury meets the Article III requirement of "injury in fact," injuries that have met the requirement have been "distinct," "palpable," "not abstract," "concrete," "particularized," "actual or imminent," and "not conjectural or hypothetical." *Allen*, 468 U.S. at 751-52 (1984); *Lujan*, 504 U.S. at 560.

Plaintiffs' amended complaint (ER0038 - ER0086) alleges that plaintiffs Lewis and Adams are employed in the City of Birmingham at wages less than $10.10.  It does not state, however, the nature of their employment or allege that they likely will receive a higher wage if the Birmingham Ordinance is enforced. *Compare* Lewis Pls.' En Banc Br. 17 (erroneously claiming to the contrary).  The Birmingham Ordinance provides that employers in Birmingham may consider tips to be wages under certain circumstances (ER0123), and nothing in the amended complaint states whether Lewis and Adams receive tips and, if so, how much. Other than a conclusory allegation that their wages violate the Birmingham Ordinance (ER0073 (¶ 103)), there are no facts to discern how they would be affected even if this lawsuit could somehow cause the Birmingham Ordinance to be enforced against their employers.

The amended complaint alleges that the Alabama NAACP has members in Birmingham who are being harmed by Act 2016-18 and it mentions one (Jamie Chrishon) who is a crewmember at Popeye's, although, again, it does not allege whether Ms. Chrishon receives tips or whether her hourly wages will be affected if the Birmingham Ordinance is enforced.  It does not specifically allege that the Alabama NAACP has standing to sue on behalf of its members.  The amended complaint also alleges that the Alabama NAACP has standing on its own behalf because it has been forced to divert resources "to educating African-American workers about the law and its impact."  ER0041 (¶ 3).

The amended complaint alleges that Greater Birmingham Ministries ("GBM") provides emergency services for people in need.  It claims it has standing to sue on behalf of its "members," which are apparently not individuals but "communities."  ER0042 (¶ 5).  It does not state how Act 2016-18 harms these "communities," but rather alleges that "African-American individuals from GBM congregations" have been harmed.  *Id.*  The amended complaint also alleges GBM has standing to sue on its own behalf because it has had to divert resources to programs to respond to poverty created by low wages.  ER0042 (¶ 6).

The amended complaint alleges that the Alabama Legislative Black Caucus ("ALBC") is an unincorporated political organization of African Americans

7

elected to the Alabama Legislature.  Some of its members are also registered voters in Birmingham, as is Plaintiff William Muhammad.  The amended complaint does not state exactly how these plaintiffs are being harmed, but other allegations contend that "the majority-black electorate of the City of Birmingham" was precluded from "exercising their electoral power over local government" as a consequence of Act 2016-18.  *E.g.*, ER0075-76 (¶¶ 110, 114, 118).

It seems doubtful whether a number of these injuries qualify under prevailing precedent.  The Alabama NAACP's diversion of resources to educate about the law, for example, is the kind of self-inflicted injury that courts usually reject.  *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010) (diversion of resources to legal counseling is insufficient).  The allegations regarding the organizational plaintiffs are inadequate to show members' injuries, and it is unclear that GBM and ALBC are even membership organizations at all.

Regardless, all of the injuries that plaintiffs allege result from the fact that the Birmingham Ordinance is not being enforced.  Accordingly, those injuries will only be remedied when it is enforced, and plaintiffs have standing only if this lawsuit makes it substantially more likely that it will be.  That is not the case here because, as shown in the next two sections, *defendants* are not *preventing* that ordinance from being enforced; at best, state law is.

B.    Traceability

The second requirement of Article III standing is a showing of a "causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent actions of some third party not before the court.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)) (ellipses and brackets as in *Lujan*).

That is, when challenging the constitutionality of a law, plaintiffs must allege and prove more than that they were (or will be) injured by that law. They must allege and prove that they have been (or will be) be injured by acts (or threatened acts) of the defendants they have chosen to sue. *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) ("The plaintiffs have never suggested that any act of the defendants [the Governor and Attorney General of Louisiana] has caused, will cause, or could possibly cause any injury to them. . . [A] plaintiff may not sue a state official who is without any power to enforce the complained-of statute"); *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) ("[P]laintiffs lack standing to contest the statutes authorizing private rights of action . . . because the defendants cannot cause the plaintiffs injury by enforcing the private-action

9

statutes"); *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (holding that plaintiff "has failed to demonstrate the necessary causal connection between its injury [the loss of some minor patients unable to obtain parental consent for abortions] and these defendants"); *Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st Cir. 1979) (dismissing Governor and Attorney General from a challenge to a state law that precluded oil companies from discriminating in price between purchasers of petroleum products on the ground that neither the Governor nor the Attorney General had ever taken or threatened to take any action with respect to the statute in question; "If a complaint fails to allege, or plaintiff fails to prove, that defendant state officers have ever taken or threatened to take any action with respect to a state statute, then . . . there is 'no case or controversy' within Article III.").

Moreover, it is insufficient that the defendants have some theoretical way of enforcing the law if it is not likely to be implemented. *1st Westco Corp. v. School District of Philadelphia*, 6 F.3d 108, 114-15 (3d Cir. 1993) (dismissing state officials from lawsuit challenging state law that precluded hiring non-residents for certain school construction projects; "although it is theoretically possible for the [Pennsylvania Attorney General and Secretary of Education] to have initiated suit against [plaintiffs'] interests, there is no evidence in the record to demonstrate that

10

two of the state's highest policy officials would have filed suit to rectify a statutory residency infraction by seven construction workers in connection with a contract with a local school district"); *Southern Pacific Transp. v. Brown*, 651 F.2d 613, 614 n.2 (9th Cir. 1980) (dismissing railroads' lawsuit against Oregon Attorney General challenging Oregon law restricting negotiated settlements with injured employees; although Oregon courts might hold that the Attorney General could sue railroads to enjoin violations, contention that attorney general "could or would bring a civil suit to enjoin violations is wholly speculative"); *Shell Oil Co.*, 608 F.2d at 212-13 (dismissing suit against Governor and Attorney General where neither had ever taken or threatened to take any action with respect to the statute in question; although "not fanciful" to suppose the state courts might interpret the law to provide such enforcement powers, they "have not settled . . . those questions").

Finally, the fact that a law officer like the Attorney General defends a state law in litigation or has advised other parties about its validity, is insufficient to trace any injury to the Attorney General. *1ˢᵗ Westco Corp. v. School Dist. Of Philadelphia*, 6 F.3d at 114 (fact that Attorney General had opined to Secretary of Education that law requiring employees of contractors of school districts to be state residents should be enforced did not make him a proper defendant; "the act of issuing an opinion about an abstract constitutional issue falls far short of enforcing

11

or threatening to enforce, a statute against a specific party"); *Southern Pacific Transportation Co. v. Brown*, 651 F.2d at 614 (in challenge to law limiting employers' ability to negotiate settlements with injured employees, fact that attorney general would advise district attorneys to presume the act constitutional and his stipulation that the district attorneys would enforce the act unless constrained, was insufficient to maintain a claim against him); *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (in lawsuit challenging the durational residency requirement for divorce in New York, court dismisses attorney general; "Although he has a duty to support the constitutionality of challenged state statutes, . . . and to defend actions in which the state is 'interested,' . . . the Attorney General does so, not as an adverse party, but as a representative of the State's interest in asserting the validity of its statutes.").

Plaintiffs have sued two relevant defendants, the Alabama Attorney General and the City of Birmingham. (Plaintiffs have not appealed the lower court's dismissal of Birmingham Mayor William Bell. Pls.' Opening Br. 10 n.5.) The Alabama Attorney General has little or no role in the enforcement of Act 2016-18, which is a law that simply preempts other (local) laws. That law's preemptive scope would be enforced by state judges in lawsuits against local employers over the validity of any local laws setting a higher minimum wage.

12

Plaintiffs' arguments to the contrary are unpersuasive.  First, they have argued that traceability can be demonstrated from the fact that the Attorney General issued press releases indicating the invalidity of the Birmingham Ordinance and declined to inform the Legislature that Act 2016-18 was unlawful. Pl's Opening Br. 48; Pl's Reply Br. 18-19 & n.12; Lewis Pls.' En Banc Br. 20. They can cite no precedent in which this was considered sufficient to meet the traceability requirement, and the cases cited above – in which attorney generals had expressed opinions about the validity of the challenged *existing* laws to other state officials with actual *enforcement* authority – are all *a fortiori* cases that militate to the contrary.  The Alabama Legislature no doubt would have considered the views of the Attorney General, just as it would have considered the views of any constitutional law scholar or public official with expertise.  But that hardly means that plaintiffs' injury can be traced to Jeff Sessions or Lawrence Tribe if those individuals failed to apprise the legislature that Act 2016-18 was unconstitutional. The members of the Alabama legislature would know better than anyone whether they were acting with discriminatory intent and whether, as a consequence, Act 2016-18 was unconstitutional.  The notion that the legislature would have acted differently if only the Attorney General had given it different advice (Pl's Reply Br. 18-19; Lewis Pls.' En Banc Br. 21-22) is fanciful speculation.

In any event, Plaintiffs are complaining about the ongoing preemptive scope of Act 2016-18 that precludes enforcement of the Birmingham Ordinance. The press release and the "failure to warn" came prior to the legislature's passage of Act 2016-18. Lewis Pls.' En Banc Br. 8-9 & n.6. A declaratory judgment (much less injunctive relief) cannot be based upon past conduct without a threat of future injury. *Cf. e.g.*, *Federal Communications Comm'n v. ITT World Communications*, *Inc.*, 466 U.S. 463, 468 n.5 (1984) ("[I]t seems questionable whether a complaint that sought only a declaration that past conduct was unlawful would present to the district Court a case or controversy over which it could exercise subject-matter jurisdiction"). Plaintiffs' injuries, if any, were caused by the passage of Act 2016-18, not the Attorney General's exercise of his statutory duties and First Amendment rights by issuing a press release or by failing to give advice he deemed inaccurate. One does not *enforce* a law by helping with its passage. If that were the case, Plaintiffs could sue any influential lobbyist.

Second, plaintiffs now assert (in their en banc briefs) that the Attorney General has the authority to sue the City of Birmingham to prevent it from enforcing the Birmingham Ordinance. Lewis Pls.' *En Banc* Br. 31-32. But the City of Birmingham has given no indication that it intends to enforce its ordinance; thus, as in *1ˢᵗ Westco*, *Southern Pacific*, and *Shell Oil*, this possibility is more

14

theoretical than real.  In any event, the Attorney General's ability to sue Birmingham to preclude it from enforcing its local ordinance is not causing Plaintiffs' harm; Act 2016-18 is, and it will continue to do so even if the district court somehow disabled the Attorney General from filing this theoretical civil lawsuit.  That injunction will not cause Birmingham employers to give up *their* defense that Act 2016-18 precludes enforcement of the Birmingham Ordinance. *That* is what is causing plaintiffs' alleged injuries.

The second "defendant" is the City of Birmingham.  Birmingham was initially named in this action solely for the purposed of affording plaintiffs complete relief.  ER0045 (¶ 18).  Over the course of this litigation, plaintiffs apparently have decided to place Birmingham in a more central role because they now claim that Birmingham is "enforcing" Act 2016-18 by *not* enforcing the Birmingham Ordinance.  ALBC Pls.' En Banc Br. 34 (Act 2016-18 "designates the City of Birmingham as the state actor required to enforce its provisions.").  Here, plaintiffs confuse implementation with compliance.  *See* Pls.' Opening Br. 50 ("Plaintiffs' injury is also a direct result of Birmingham's compliance with Act 2016-18"); Pls.' Reply Br. 20 ("Birmingham has no choice but to comply with Act 2016-18 . . ."); Lewis Pls.' En Banc Br. 22 ("Plaintiff's injury is also directly traceable to Birmingham's compliance with Act 2016-18.").  Causation requires

15

that the defendant implement the complained-of law, and one does not "implement" a prohibition by not doing the thing prohibited; a citizen does not "implement" a law against stealing by not engaging in theft and a state does not "implement" the Fourteenth Amendment by not racially discriminating.

In any event, and contrary to Plaintiffs' suggestion, Act 2016-18 does not *prohibit* Birmingham from *trying* to enforce its minimum wage ordinance, at least not in the same sense that the law prohibits stealing. Act 2016-18 does not authorize a fine against Birmingham if it disobeys its prohibition, and no city official in Birmingham will go to jail if the city passes a new minimum wage law or if it sues an employer paying less than the wage mandated by the Birmingham Ordinance. Act 2016-18 merely sets up an affirmative defense for any employer sued by Birmingham (or any of the employer's employees) demanding that the employer pay a higher wage.

Indeed, as already noted, Birmingham could sue those employers right now. It contends that Act 2016-18 is discriminatory and unconstitutional. ER0073, ER0097 (¶ 102) (admitting that Act 2016-18 "fits a historical pattern of legislation that discriminates against African Americans"); ALBC Pls.' En Banc Br. 32 ("The City acknowledges that Act 2016-18 violates Plaintiffs-Appellants' federal protected rights . . . *so it has a duty not to comply with it*. It can proceed to enforce

16

its minimum wage ordinance in state court . . .") (emphasis added).  It need not

wait for a district court's permission to enforce its law, and the district court's view

of whether Act 2016-18 is constitutional should hardly be dispositive of

Birmingham's own assessment.

Finally, defendants correctly have raised the issue of whether Birmingham

should properly be considered a defendant at all.  Appellees' Opening Br. 19.  In

*Washington v. Seattle School District No. 1*, 458 U.S. 457 (1982), the case creating

the "political process" doctrine on which plaintiffs rely, the political subdivision

(the Seattle School District) was the plaintiff, not a defendant.  Given

Birmingham's view of Act 2016-18, it is highly questionable that a "case or

controversy" even exists between Plaintiffs and Birmingham.

C.    Redressability

The most serious impediment to plaintiffs' standing is redressability.  The

district court cannot provide any relief that likely will remedy plaintiffs' injury

because that would require successful enforcement of the Birmingham Ordinance

against Birmingham employers.[1]  Those employers are not in this lawsuit and will

---

[1]    Somewhat opaquely, the ALBC Plaintiffs claim that their denial to equal
access to the political process "would be fully redressed by an injunction requiring
Birmingham to enforce its ordinance, whether or not enforcement led to higher
wages."  ALBC Pls.' En Banc Br. 36.  But if enforcement failed because of Act
                                                                        (continued...)

17

retain their right to assert that Act 2016-18 is constitutional in any future lawsuit in which they are involved.

Thus, this case is analogous to *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), a challenge to an Oklahoma law that made abortion providers liable for any medical costs required subsequent to an abortion performed on a minor without parental consent or knowledge. Plaintiff previously provided abortions to minors without parental consent, and sued state officials responsible for various state-run medical facilities on the theory that those facilities would enforce the Oklahoma law against it in the future. The court concluded that the plaintiff could not show redressability because an injunction against the named defendants could not prevent other medical providers or the minor patients themselves, if they required subsequent medical care, from suing plaintiff under the law. As to the argument that a declaratory judgment would redress plaintiff's injury by deterring others from suing under the law, the court held that that argument was "entirely speculative" and "overlooks the principle that it must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly." *Id.* at 1159.

---

[1](...continued)
2016-18, it is hard to understand how that result would redress the ALBC plaintiffs' political process injury.

Plaintiffs wonder how Birmingham employers could ignore a declaration of unconstitutionality by the district court.  Lewis Pls.' En Banc Br. 26-27.  The fact that those employers are not parties to this litigation is sufficient reason.  Moreover, there is "nothing in the record to suggest any significant likelihood that [Birmingham employers] would consider themselves bound by a judgment to which they were not parties."  *Nova Health Systems*, 416 F.3d at 1159 n.9.  Plaintiffs' *ipse dixit* assertions to the contrary (Pls.' Reply Br. 21) are unsupported.

In this regard, it is important to remember that standing is assessed at the outset of a litigation.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (holding that self-financed candidate had standing to challenge law that gave opponents of self-financed candidates the option of an advantage in fundraising even though plaintiff's opponent ultimately chose not to use that option; "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed").  Thus, the standing determination is whether the *district court*'s judgment will redress the plaintiffs' injury.  The small chance that the Supreme Court would accept the case on appeal is not relevant.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.5 (1992) (plurality op.) ("Since, as we have pointed out above, standing is to be determined as of the commencement of suit; since at that point it could certainly not be known that the

19

suit would reach this Court; and since it is not likely that an agency would feel compelled to accede to the legal view of a district court expressed in a case to which it was not a party; redressability clearly did not exist.").

This alone undermines plaintiffs' claim of redressability, but it deserves mention that the district court's authority to provide the relief that plaintiffs seek is unclear. The amended complaint asks the district court to direct the Attorney General "to give notice to Alabama legislators and to members of the public" that Act 2016-18 violates federal law. ER0085. It is hardly obvious that a court can require an elected official to promulgate a view that is not his own anymore than the federal government can compel a state official to do its bidding, particularly if federal law does not otherwise require it. In any event, surely the recipients of this message would understand that the views being conveyed are those of the court, not the Attorney General.[2] The notion that the legislature would immediately repeal a statute – whose alleged unconstitutionality is based *on their own purportedly discriminatory purpose* – based solely on a district court's conclusion is, to put it kindly, speculative.

---

[2]    Plaintiffs correctly note that the Attorney General has statutory obligations to convey *his own* views about the constitutionality of a statute and the views of a court of last resort. Pls.' Opening Br. 48-49; Pls.' Reply Br. 17. The views of the district court are neither.

Plaintiffs also claim that the district court could *order* Birmingham to enforce its ordinance. ER0086. But nothing in the various claims plaintiffs have made would authorize a district court to *require* Birmingham to enforce its law. Generally speaking, private litigants do not have standing to force a governmental body to exercise its prosecutorial discretion. *E.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). And even if an exception could be made to that rule here, Birmingham's court-mandated *efforts* to enforce its ordinance would hardly result in its *actual* enforcement, since the court in which that effort was made still would have to agree that Act 2016-18 is invalid.

## II.    PLAINTIFFS HAVE AN ADEQUATE REMEDY IN STATE COURT

This case also has significant federalism implications. Specifically, state courts are equal in every respect to lower federal courts in their authority to resolve questions of federal constitutional law. *E.g.*, *Steffel v. Thompson*, 415 U.S. 452, 460-61 (1974) ("state courts have the solemn responsibility, equally with the federal courts 'to guard, enforce, and protect every right granted or secured by the constitution of the United States'") (*quoting Robb v. Connolly*, 111 U.S. 624, 637 (1884)); *Lockhart v. Fretwell*, 506 U.S. 364, 376 (1993) (Thomas, J., concurring)

21

("In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located"); *R.W.T. v. Dalton*, 712 F.2d 1225, 1233 (8th Cir. 1983) ("'Federal courts (except for the Supreme Court) are not superior to state courts, or higher in any theoretical order of precedence.'") (*quoting* Richard S. Arnold, *State Power To Enjoin Federal Court Proceedings*, 51 Va. L. Rev. 59, 71 (1965)), *abrogated on other grounds*, *Kaiser Aluminum & Chemical Corp. v. Bonjourno*, 494 U.S. 827 (1990); *United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1075 (7th Cir. 1970) (citing various authorities to the effect that state courts are coordinate courts with lower federal courts, on an equal footing in their exposition of federal law). *See also* David L. Shapiro, *State Courts And Federal Declaratory Judgments*, 74 Northwestern L. Rev. 759, 771 (1979) ("Other federal courts [aside from the Supreme Court] are no more than coordinate with the state courts on issues of federal law"); *id.* at 774 ("The concept that state and lower federal courts are coordinate courts on issues of federal law is one that, in my view, is deeply rooted in the federal system").

A corollary of this principle is that state courts have no obligation to follow interpretations of federal law (including the U.S. Constitution) of lower federal courts. *Lockhart*, 506 U.S. at 376 (Thomas, J., concurring) ("The Supremacy

22

Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation"); Shapiro, *supra*, at 771 ("[T]he state courts generally believe, I think rightly, that the question whether to defer to lower federal court decisions continues to be a matter of choice . . . ."); Michael C. Dorf, *Facial Challenge To State And Federal Statutes*, 46 Stan. L. Rev. 235, 283 n.219 (1994) (collecting authorities).  *See also Glass v. Birmingham Southern R. Co.*, 905 So. 2d 789, 794 & n.2 (Ala. 2005) ("[I]n determining federal common law, we defer only to the holdings of the United States Supreme Court and our own interpretations of federal law.  Legal principles and holdings from inferior federal courts have no controlling effect here, although they can serve as persuasive authority.").

Accordingly, a state court with jurisdiction over Birmingham employers should render its own opinion regarding the constitutionality of Act 2016-18.  As should Alabama's state appellate courts.  Like the agency referred to in footnote 5 of the *Lujan* opinion cited earlier, the state courts would only give the district court's view on that issue whatever weight its persuasiveness warranted.

The ALBC Plaintiffs allege that any subsequent suit involving Birmingham employers will end up back in federal court, citing 28 U.S.C. § 1443(2).  ALBC

23

Pls.' En Banc Br. 37. This would make no difference in the standing argument since a coordinate district court (much less private employers) would not be bound by another's judgment. In any event, the ALBC Plaintiffs' argument is dependent upon the employers suing the City for a declaratory judgment instead of the City (or employees) suing the employers; the ALBC Plaintiffs assert that this is "the most likely scenario" (ALBC Pls.' En Banc Br. 37) but do not explain why. It is also dependent on the dubious proposition that the City's enforcement of the Birmingham Ordinance would be deemed an act derived from a *specific* law providing for equal rights (or a refusal to act based on such a specific law) instead of simply an act derived from a law requiring a minimum wage, or, at best, a refusal to enforce Act 2016-18 based on general equal protection principles. *See, e.g.*, *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983) ("Because the first prong of this test [for removal] demands that the civil rights asserted arise under laws phrased specifically in terms of racial equality rather than in general terms of equality for all citizens comprehensively, broad first amendment or fourteenth amendment claims do not satisfy the test . . ."). Further, Section 1443(2) is available only to federal officers and those acting on their behalf (first phrase) or state officers (second phrase), and Birmingham is neither. *City of Greenwood v. Peacock*, 384 U.S. 808, 824 & n.22 (1966). The ALBC Plaintiffs' strange reliance

24

on *Voketz v. City of Decatur*, 904 F.3d 902 (11th Cir. 2018) (ALBC Pls.' En Banc Br. 37) is misplaced; that case never discussed removal at all, much less the scope of § 1443(2).

*   *   *

Despite their apparent aversion to state court proceedings in which Birmingham employers could be made parties, plaintiffs repeatedly have mentioned a case in Jefferson County Circuit Court in which the state court concluded that the Alabama Memorial Preservation Act, a state law prohibiting the alteration of certain buildings and memorials on public property, was unconstitutional as a violation of Birmingham's free speech rights. *E.g.*, ALBC Pls.' En Banc Br. 30-31; Lewis Pls.' En Banc Br. 32-33. Of course, this has little to do with standing here because the memorial preservation law did not regulate private parties, whose compliance with the law was necessary for plaintiffs to obtain relief. But it *does* show that state courts are perfectly capable of enforcing federal constitutional rights.

And this has a significant consequence for plaintiffs' suit. Plaintiffs seek various forms of injunctive relief against defendants, but it is well-established that injunctive relief will not be granted if there is an adequate remedy at law. The employee plaintiffs *have* an adequate remedy at law, a remedy which would, in

25

turn, provide a remedy for all plaintiffs. If Lewis, Adams, and Chishon (and any other employee-members of the organizational plaintiffs) are being paid less than they are entitled to under the Birmingham Ordinance, they can sue in state court. When the defendants there assert the defense of Act 2016-18, the employees can raise that statute's alleged unconstitutionality. Accordingly, the injunctive relief they seek here is unavailable. *See, e.g.*, *Gras v. Stevens*, 415 F. Supp. 1148, 1153 (S.D.N.Y. 1976) (3-judge court) (Friendly, J.) (holding that a plaintiff challenging the constitutionality of New York's law providing that a husband might be required to pay the wife's attorneys' fees during a divorce proceeding could not obtain equitable relief under Section 1983 because he could raise the constitutional issue in the divorce proceeding; "If the remedy at law is plain, adequate and complete, the aggrieved party is left to that remedy in the state courts") (cleaned up).

III.    THE ELEVENTH AMENDMENT PRECLUDES SUIT
AGAINST THE ATTORNEY GENERAL

Under the Eleventh Amendment, and the principles of state immunity that its passage confirmed, a state cannot generally be sued in federal court. A limited exception to this rule was created in *Ex Parte Young*, 209 U.S. 123 (1908) for suits for injunctive relief based upon federal law against state officials in their official capacity. But the exception is limited to "individuals who, as officers of the state,

26

are clothed with some duty in regard to enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution. . .” *Id.* at 155-56.  Here the Attorney General has not threatened to commence any proceeding nor is there any evidence that he is about to commence proceedings.  *E.g.*, *Children's Healthcare Is A Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (“Courts have not read *Young* expansively . . .  *Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute”); *id.* at 1416 (“the phrase ‘some connection with the enforcement of the act’ does not diminish the requirement that the official threaten and be about to commence proceedings”); *1ˢᵗ Westco Corp.*, 6 F.3d at 113 (“[a] plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement only if the official has either enforced, or threatened to enforce the statute against the plaintiffs”); *Long v. Van De Kamp*, 961 F.2d 151, 152 (9th Cir. 1980) (“[U]nder *Ex Parte Young* . . . there must be a threat of enforcement”); *Okpalobi*, 244 F.3d at 414-15 (plurality op.) (*Ex Parte Young* permitted suits against state officers with a connection to the enforcement of, or a duty to enforce, a challenged act if they are “threatening to exercise that duty”).

Accordingly, mere advice that a statute is constitutional is not sufficient. *1ˢᵗ Westco*, 6 F.3d at 114 (discussing *Ex Parte Young* and its application to Attorney General, who advised state Secretary of Education that statute requiring school construction contracts to hire state residents was constitutional, and Secretary of Education, who passed that opinion on to school district and concluding that neither were amenable to suit); *Southern Pacific Transp. Co. v. Brown*, 651 F.2d at 614 (dismissing suit against Oregon Attorney General challenging law restricting the negotiation of settlements with injured employees even though AG stipulated that he would advise local prosecutors that the law was constitutional and that they would enforce it).

Thus, the *Ex Parte Young* exception is inapplicable to plaintiffs' suit against the Attorney General and the Eleventh Amendment precludes suit against him.

<u>Conclusion</u>

The district court's judgment dismissing the case for lack of subject matter jurisdiction should be affirmed.

Respectfully submitted,

*/s/ Michael E. Rosman*
Michael E. Rosman

28

CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave. NW, Suite 625
Washington, DC 20036
(202) 833-8400

Attorneys for *Amicus Curiae*

<u>Certificate of Compliance</u>

I certify that the foregoing paper complies with the type-volume limitation in Fed. R. App. P. 29(a)(5) because it contains 6306 words, excluding those parts of the paper exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, as counted using the word-count function of WordPerfect 12 software.

*/s/ Michael E. Rosman*
Michael E. Rosman

<u>Certificate of Service</u>

I certify that on April 24, 2019, I filed a copy of the foregoing proposed

brief with the Court's ECF/CM system, which served it on counsel for the parties.


*/s/ Michael E. Rosman*
Michael E. Rosman
